In re LEWIS et al.

(District Court, S. D. New York. January 12, 1899.)

BANKRUPTCY—COMMENCEMENT OF PROCEEDINGS—DELAY IN ISSUING SUBPOENA—VOLUNTARY ASSIGNMENT.

> The bankrupts made a voluntary assignment in favor of their creditors on July 18, 1898; on November 2d following, less than four months thereafter, a petition was filed against them on that ground, and a subpoena desired for service. The clerk did not issue the subpoena, because the court had directed that no further proceedings should be had until the supreme court had promulgated "the necessary rules, forms and orders" as required by section 30 of the act. When those rules were promulgated, the subpoena was at once issued on December 9th, and served. This was more than four months after the assignment; *held* that the proceedings were commenced by the filing of the petition, and that the delay in issuing the subpoena, as stated, did not vitiate the proceeding or validate the assignment of July 18th.

In Bankruptcy. Subpoena delayed.

Blumenstiel & Hirsch and Bowers & Sands, for petitioning creditors.

Putney & Bishop, for bankrupts.

BROWN, District Judge. On November 2, 1898, a petition was filed with the clerk of this court by various creditors of the firm of Charles Lewis & Bros. to have that firm adjudged bankrupts. The

acts of bankruptcy alleged in the petition are that the said firm, being insolvent, on the 18th of July, 1898, confessed a judgment to Isaac K. Cohn for the sum of $5,878 with intent to prefer him as a creditor, and also on the same day, being insolvent and with intent to prefer Rebecca Cohn and Isaac K. Cohn, as executrix and executor of Jacob Cohn, deceased, confessed a judgment in their favor for the sum of $7,339.04; that executions upon said judgments were afterwards issued, under which levies were made by the sheriff upon all the personal property of the firm, and that the property was sold and converted into money thereunder prior to August 15, 1898; and that thereby the alleged bankrupts suffered and permitted judgment creditors to obtain a preference over other creditors, the proceedings thereon not being vacated or discharged; and further that on the 18th day of July, 1898, said alleged bankrupts, with intent to prefer Nathan Lewis over their other creditors, transferred to him certain outstanding accounts of the firm of the value of about $10,000.

The alleged acts of bankruptcy having been committed after the bankrupt law went into effect, the petition herein was filed as soon as it was allowable to file it under the provisions of the act, viz. on November 2, 1898, and within less than four months after the acts of bankruptcy specified. This court being of the opinion that further proceedings in such cases should be suspended until the promulgation by the supreme court of the "necessary rules, forms and orders as to procedure and for carrying the act into force" as required by section 30 of the act, no subpœna was at that time issued by the clerk, although requested by the attorneys for the petitioning creditors; but on the 9th of December, 1898, as soon as possible after the rules and forms were promulgated by the supreme court, the subpœna was issued by the clerk and duly served. In answer to the petition the bankrupts thereupon filed a special plea in bar setting up in effect that through the clerk's delay in issuing the subpœna until December 9th, the bankruptcy proceedings were not legally commenced until that date, and that the petition should not be deemed filed until that date; and that as this was more than four months after the acts of bankruptcy alleged in the petition, the petition should be dismissed.

Upon this plea the case has been brought to a hearing and the question presented has been carefully argued. The defendants' contention is based largely upon the eighteenth section of the act, which provides that "upon the filing of a petition for involuntary bankruptcy, service thereof, with a writ of subpœna, shall be made upon the person therein named as defendant in the same manner as service of such process is now had upon the commencement of a suit in equity in the courts of the United States," etc.; and cases under the statute of limitations are cited in which the filing of the complaint alone, without the issuing of any subpœna, or where the subpœna has been withheld by the complainant, has been held insufficient to stop the running of the statute. These cases have not in my opinion any just application to the present case. On the part of the petitioning creditors there has been no withholding of

process, nor any lack of diligence in the endeavor to prosecute their rights. The delay that ensued was wholly owing to the peculiar provisions of the act, and the judgment of the court as to the appropriate proceedings thereupon; and the ordinary rule of law is that the delays of the court shall not prejudice the diligent suitor in a proceeding which he has instituted in good faith.

The argument for the defense has no basis in the language of the act itself. Even section 18 in its reference to proceedings in equity is confined to the "service of process"; while paragraph 10 of section 1 expressly declares that "'commencement of proceedings,' with reference to time, shall mean the date when the petition was filed." Section 3, paragraph (b), provides that "a petition may be filed against a person who is insolvent and who has committed an act of bankruptcy within four months after the commission of said act." From this provision and from many others of a similar purport scattered through the act, it is clear that the filing of the petition in good faith not only gives jurisdiction to the court from that moment, but is made the precise point of time from which the various limitations in the act are to be reckoned. Nowhere in the act is it intimated that the immediate issuing of a subpœna is a condition of the legal effect of filing the petition (In re Bear, 5 Fed. 53), and no such condition should be added by the court.

I do not perceive any hardship in this ruling upon the creditors who have sought and obtained a preference forbidden by the act. The last section of the act provides that it "shall go into full force and effect upon its passage," which was upon July 1, 1898. These creditors were aware, therefore, that their acts were forbidden by the statute, and were at the risk of being avoided upon a "petition filed" by creditors within four months thereafter. Their petition was filed in time, and all the requirements of the act on their part were complied with. Section 30 of the act, moreover, recognizes the fact that certain "rules and modes of procedure" were "necessary" for "carrying the act into force and effect." Such rules and forms could not be prescribed by the supreme court instanter. The effect of the two provisions together was that while there might be some delays in the enforcement of the remedies obtainable under the act, the legal rights and obligations of all persons under it, must be adjudged according to the provisions of the act from the time of its passage.

To sustain the defendants' contention would be not only to refuse to give effect to the obvious purpose of the act to afford creditors an opportunity to avoid preferences given after its passage, but also to refuse to give effect to the express language of the act by ingrafting upon it a condition nowhere to be found in it; and that too in favor of preferences which it is one of the main purposes of the act to avoid.

The plea must be overruled and an adjudication of bankruptcy ordered.