## In re FIXEN & CO.

(District Court, S. D. California.   September 15, 1899.)

No. 1,282.

1. BANKRUPTCY—JURISDICTION—APPOINTMENT OF RECEIVER.

Both under the express grants of authority contained in the bankruptcy act, and in the exercise of the general equity powers possessed by a court of bankruptcy, such court has jurisdiction to appoint a receiver to take charge of the property of a person against whom a petition in involuntary bankruptcy has been filed, and hold the same until the trustee in bankruptcy is appointed and qualified.

2. SAME—GROUNDS FOR APPOINTMENT.

Where, after the filing of a petition in involuntary bankruptcy against a retail trader, an application was made for the appointment of a receiver to take charge of his property until a trustee should be qualified, wherein it was alleged that he had been fraudulently induced to sell his entire stock in trade to a certain corporation for an entirely inadequate price, the major part of the same consisting of notes of such corporation, which it could not pay, and its own stock, which was worthless, and that the corporation or its vendee was rapidly selling off the stock at sacrifice prices, so that it would probably all be disposed of before a trustee could be appointed, leaving nothing for the creditors of the bankrupt but the inadequate remedy of actions for damages and for stockholders' liabilities, *held*, that the petition showed sufficient grounds for the appointment of a receiver.

3. SAME—POWERS OF RECEIVER.

Where the court of bankruptcy appoints a receiver "to take charge of the property of the bankrupt. after the filing of the petition, and until it is dismissed or the trustee is qualified," as authorized by Bankruptcy Act 1898, § 2 (3), the functions of such receiver are not limited to the receipt and custody of such property as may be voluntarily surrendered to him, but it is his duty to collect and recover the property, by suit if necessary; and the court has jurisdiction, in appointing such receiver, to authorize him to institute all necessary actions at law or in equity for the recovery of the bankrupt's property.

4. SAME—APPLICATION FOR EXAMINATION OF WITNESS.

A receiver appointed to take charge of the property of a bankrupt until the qualification of a trustee has the right to apply for an order summoning designated persons to appear and submit to examination in the bankruptcy proceeding, under Bankruptcy Act 1898, § 21, providing that such order may be made upon the application of "any officer."

5. SAME—REQUISITES OF APPLICATION.

An order for the examination of a witness in bankruptcy proceedings may be made on the simple application or demand of the receiver or trustee, without any showing of the questions to be asked, or the particular facts to be inquired into.

6. SAME—REFUSAL OF WITNESS TO APPEAR.

A person who is summoned for examination as a witness in a proceeding in bankruptcy, on the application of a receiver appointed by the bankruptcy court, cannot refuse to attend or be examined on the ground that the order appointing the receiver was erroneous or improvidently made.

7. SAME—OBJECT AND SCOPE OF EXAMINATION.

Under Bankruptcy Act 1898, § 21, providing that the courts of bankruptcy may order any designated person who is a competent witness under the laws of the state to appear and be examined concerning the acts, conduct, or property of the bankrupt, it is not necessary to the ordering of such an examination that there should be a suit pending by or against the bankrupt or his estate.   The examination is not intended as a means of procuring testimony pertinent to issues on trial, but its object is to

afford to creditors and the trustee or receiver full information touching the bankrupt's estate, in order that the necessary steps may be taken for its recovery and preservation.

**8. SAME— EVIDENCE—RELEVANCY.**

Where it is alleged that the bankrupt's stock of goods was sold by him to a certain corporation without any adequate consideration, the sale being induced by the fraud of the vendee, a receiver of the bankrupt's estate has the right, under process from the court of bankruptcy, to examine any books or documents of such corporation showing or tending to show its receipt or disposition of said stock, or in any other way relating thereto.

**9. SAME—BOOKS AND PAPERS—RELEVANCY OF CONTENTS.**

A person summoned by a court of bankruptcy to appear and be examined in a proceeding in bankruptcy, and to produce certain books of account and records, cannot refuse to produce the books and papers called for, or to answer questions relating thereto, on the ground that they contain nothing relating to the bankrupt's property, as this matter is not left to the opinion of the witness, but must be determined by the court.

**10. SAME— DEALING WITH CONTUMACIOUS WITNESS—ADVICE OF COUNSEL.**

Where a witness under examination in bankruptcy refuses to produce books called for by the summons, and to answer questions relating thereto, but does so under the direction of counsel, who in good faith advise him to pursue that course, and professes his readiness to submit to an examination if the court should hold it proper. he will not be punished as for a contempt, but the court will simply order the examination to proceed.

In Bankruptcy.

E. T. Dunning, for petitioning creditors.
John T. Jones, for witness M. N. Sheldon.
R. H. F. Variel, for Chapin-Tibbot Co.

WELLBORN, District Judge. The material facts are these:

A creditors' petition was filed against said bankrupt, Fixen & Co., a corporation, August 14, 1899, and the order to show cause thereon was made returnable on the 21st day of the same month. On September 1, 1899, said corporation was duly adjudged a bankrupt, and a general reference of the cause was made. Prior to the adjudication, to wit, on August 19, 1899, on the application hereinafter mentioned, it was ordered by the court:

"That Edward W. Forgy be, and is hereby, appointed receiver herein, and that said receiver shall cause to be executed a bond in the sum of five thousand dollars. conditioned as required by law, for the faithful discharge of his duties as such receiver. And said receiver is hereby authorized to take charge of the property of said bankrupt, and to keep the same until the further order of this court. And it is further ordered that the said receiver is authorized to commence and prosecute all necessary actions for the recovery of the property belonging to said bankrupt."

The application or petition for said order alleged, among other things: That said bankrupt for many years last past, and up to and just prior to June, 1899, had been the owner of a retail store, containing a large stock of merchandise, in Los Angeles, Cal., worth $60,000, substantially all the property of said corporation. That Elias O. Chapin and seven other persons, specifically named, conspired together to, and did, organize, under the laws of the territory of Arizona, a corporation known as the Chapin-Tibbot Commercial Company, with an authorized capital of $350,000, of 3,500 shares, of $100 each, of stock, nonassessable, and the stockholders not person-

ally liable for corporate debts. That said stock was divided into common stock of $175,000 in amount, and the balance preferred stock (only common stock entitled to vote at stockholders' meetings), and that said parties subscribed for $226,700 out of a total subscription of $284,400, and that, of their subscription, $154,200 consisted of common or voting stock, out of a total of $160,000 of common or voting stock. That the officers and directors, who were Elias C. Chapin, president, John W. Tibbot, vice president, S. Goodenow, treasurer, W. M. Sheldon, secretary, J. M. Davies, J. B. Tibbot, M. N. Sheldon, and two others to petitioners unknown, also conspired, by false and fraudulent representations and fraudulent promises made to the said Fixen & Co., to procure, and did procure, from said Fixen & Co., in June, 1899, a transfer of said store and merchandise, without any adequate, sufficient, or legal consideration, and with intent on the part of the promoters, officers, and stockholders of the said Chapin-Tibbot Commercial Company to obtain said stock of merchandise, and appropriate the same and the proceeds thereof to the use of the said Chapin-Tibbot Commercial Company, without the payment of any adequate or proper consideration therefor, and to hinder, delay, and defraud the creditors of said Fixen & Co. of their just debts and obligations. That said Fixen & Co. were indebted to various creditors in the aggregate sum of about $55,000 at the time of said transfer, none of which debts were assumed by said Chapin-Tibbot Commercial Company, and by said transfer, and the want of any adequate consideration therefor, said Fixen & Co. were rendered irretrievably insolvent, and that of all the matters and things aforesaid said Chapin-Tibbot Commercial Company and the stockholders, directors, and officers thereof, then and there had notice. That said Chapin-Tibbot Commercial Company took immediate possession of said stock of merchandise and business, and from thence until the 22d day of July, 1899, sold and disposed of the same at reduced prices, and rapidly converted the same into money, for the purpose of raising funds to pay off the notes of said Chapin-Tibbot Commercial Company, amounting to $25,000, which had been given in part payment for said merchandise; only $5,000 having been paid in cash; the balance of the consideration for said transfer being worthless stock in said Chapin-Tibbot Commercial Company. That, on the day and year last aforesaid, said Chapin-Tibbot Commercial Company, being unable to meet said notes, and having no money or means of raising money upon its property with which to pay said notes, and being then and there insolvent, and to avoid attachments upon said property, illegally, and without any adequate, sufficient, or lawful consideration, transferred said stock of merchandise and business to said S. Goodenow, who took said transfer of said merchandise, then amounting to $40,000 in value, and agreed to pay and take up said notes of the said Chapin-Tibbot Commercial Company; and immediately thereafter said S. Goodenow caused to be organized a new corporation, by the name of the Goodenow-Sheldon-Fixen Company, and transferred to it the remaining portion of said stock of merchandise. That said corporation is organized under the laws of the state of California, with an authorized capital of $200,000, $75,000 of which is subscribed as follows:

S. Goodenow, 350 shares, $35,000; Willard M. Sheldon, 120 shares, $12,000; A. H. Fixen, 100 shares, $10,000; Frank N. Gibbs, 80 shares, $8,000; Millard N. Sheldon, 100 shares, $10,000,—and which said subscription embraces all the stock which has been subscribed or issued by said corporation. That said corporation has no paid-up capital, other than the stock of merchandise and good will so transferred to it as aforesaid, and that said A. H. Fixen and W. M. Sheldon are financially irresponsible. That said Goodenow-Sheldon-Fixen Company is rapidly selling and disposing of said merchandise at greatly reduced prices, and sacrificing the same. That a trustee in bankruptcy cannot, in all probability, in the ordinary course of procedure, be elected herein before some time in October, 1899, and in the meantime said stock of merchandise, or at least the substantial portion thereof, will, in all human probability, have been dissipated and disposed of, and nothing left for the creditors of said Fixen & Co., except actions for damages and stockholders' liabilities against the persons connected with said corporation, which would be inadequate remedies for the creditors of said bankrupt. That it is absolutely necessary for the preservation of said bankrupt estate to take charge of the property of said bankrupt, until the trustee has qualified, by the appointment of a receiver, with authority in him to begin and prosecute all necessary actions and proceedings to recover and preserve said estate. Said receiver duly qualified on the 19th day of August, 1899.

On August 26, 1899, the court ordered:

"That M. N. Sheldon, Elias C. Chapin, John W. Tibbot, S. Goodenow, Willard M. Sheldon, J. W. McCracken, and Frank N. Gibbs be and appear before William D. Stephens, referee in bankruptcy of this court, to whom this matter is hereby referred, to be examined before him, on the 26th day of August, 1899, at 2 p. m., at the office of said referee, rooms 5–7 of the Law Building, 125 Temple street, in the city of Los Angeles, California, concerning the acts, conduct, and property of said bankrupts, Fixen & Co."

The petition for said order alleged, among other things:

"That the Chapin-Tibbot Commercial Company kept books of account showing in part, at least, its dealings and transactions with Fixen & Co., and which certain the only record of such transactions. That said receiver is investigating the facts relative to the transfer from said Chapin-Tibbot Commercial Company of the property of said bankrupt; and in such investigation, and to arrive at the facts thereof, it is essential to have access to, and an inspection of, the books and papers of said Chapin-Tibbot Commercial Company. That, after much difficulty and repeated demands, an inspection was twice obtained of the minute book of said Chapin-Tibbot Commercial Company, and the said minute book was materially altered, at the time of the last inspection thereof, from what it was at the first. That among the assets that have come into the hands and possession of said receiver is certain stock of the Chapin-Tibbot Commercial Company. That said receiver, as such, and as the owner and holder of stock in said Chapin-Tibbot Commercial Company, has repeatedly requested and demanded an inspection of the cash book of said Chapin-Tibbot Commercial Company, which is now in the custody, control, and possession of M. N. Sheldon, who is the secretary and a director of said Chapin-Tibbot Commercial Company, and is also the secretary and a director of the Goodenow-Sheldon-Fixen Company. That said receiver refers to the petition in bankruptcy herein, and to the petition for the appointment of a receiver herein, and to the other files, records, and papers in said matter, as a part hereof. That, unless an immediate and expeditious exam-

ination of said cash book and other books and papers of said Chapin-Tibbot Commercial Company can be obtained, great and irreparable injury will ensue to the trust of which your petitioner is receiver. That the statutes of California [Pen. Code, § 565] provide, 'Every officer or agent of any corporation, having or keeping an office within this state, who has in his custody or control any book, paper, or document of such corporation, and who refuses to give to a stockholder or member of such corporation, lawfully demanding, during office hours, to inspect or take a copy of the same, or any part thereof, a reasonable opportunity so to do, is guilty of a misdemeanor.' That notwithstanding your receiver and other stockholders of said Chapin-Tibbot Commercial Company have demanded an inspection of the books and papers of said last-named corporation, pursuant to said statute above quoted, nevertheless said M. N. Sheldon, upon whom said demand was made, refuses to allow any inspection of said cash book, or any of the books of said Chapin-Tibbot Commercial Company. That the following are officers and directors of said Chapin-Tibbot Company: Elias C. Chapin, president; John W. Tibbot, vice president; S. Goodenow, treasurer; M. N. Sheldon, secretary; J. W. McCracken, director; Willard M. Sheldon, director; John M. Davies, director; Frank N. Gibbs, director; and said officers are the persons chiefly instrumental in manipulating the transfer of the assets of the bankrupt to the said Chapin-Tibbot Commercial Company."

Pursuant to said order, M. N. Sheldon was duly summoned to appear as a witness and produce certain books and documents before William D. Stephens, referee in bankruptcy, who certifies in relation to the examination of said Sheldon as follows:

"I, William D. Stephens, one of the referees of said court, in bankruptcy, do hereby certify that in the course of the proceedings in said cause before me the following questions arose, pertinent to said proceedings: On the 26th day of August, 1899, M. N. Sheldon was duly summoned to appear as a witness before me, to be examined, and produce certain books and documents, as shown by the summons and return thereon hereto attached, marked 'Exhibit A.' That said M. N. Sheldon disobeyed said order and summons, by failing to produce said documents and books. Thereupon he was ordered by me to produce the cash book and journal of the Chapin-Tibbot Commercial Company before me forthwith, which he failed and neglected to do; and thereupon he was again ordered to produce said books last mentioned, before me, on August 28th, at 2 p. m. At said last-mentioned time said Sheldon brought said book into court, but refused to produce the same for examination, and refused to be examined according to law. I find that the said M. N. Sheldon is the secretary of the Chapin-Tibbot Commercial Company, and was at all times herein mentioned in the lawful possession and control of said cash book or journal of the Chapin-Tibbot Commercial Company, and the minute book and other books of account of said corporation; that the testimony of said M. N. Sheldon and Edward W. Forgy, relating to said matter, was taken down in shorthand before me by F. J. McClary, who was first duly sworn by me to correctly take the same down in shorthand and transcribe the same into longhand; that annexed hereto is the transcript of said testimony, which contains all objections, motions, appearances of counsel, and rulings by myself as referee; also, attached hereto is the summons and return thereon, to said M. N. Sheldon and others, marked 'Exhibit B,' and made a part hereof. And I do hereby certify that the said M. N. Sheldon did, in the said proceedings before me, (1) disobey the lawful order of the judge of said court, made on the 26th day of August, 1899, for the examination of said witness; (2) disobey the lawful process and writ of summons marked 'Exhibit A'; (3) neglect to produce, after having been ordered to do so, the cash book or journal of the Chapin-Tibbot Commercial Company, the same being a pertinent document; (4) refuse to be examined according to law on August 28, 1899, after having taken the oath as a witness. And the said questions are certified to the judge for his opinion and decision thereon."

Counsel for said Sheldon seek to justify his disobedience of the orders and processes above mentioned on the grounds: First, that

the order appointing a receiver was in excess of the jurisdiction of the court, and therefore said order and all proceedings had for the examination of said witness were void; second, that, conceding the general power of the court, its exercise in this instance was erroneous; third, that the books which the witness was required to produce were irrelevant. These contentions will be examined in the order of their statement.

1. The grant of power to courts of bankruptcy to appoint receivers is as follows:

"That the courts of bankruptcy * * * are hereby invested * * * with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings; * * * (3) * * * appoint receivers, or the marshals, upon application of parties in interest, in case the courts shall find it absolutely necessary for the preservation of estates to take charge of the property of bankrupts from the filing of the petition and until it is dismissed or the trustee is qualified; (5) authorizes the business of bankrupts to be conducted for limited periods by receivers, the marshals, or trustees, if necessary in the best interests of the estates; * * * (15) make such orders, issue such processes, enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this act. * * * Nothing in this section contained shall be construed to deprive a court of bankruptcy of any power it would possess, were certain specific powers not herein enumerated." Bankruptcy Act 1898, § 2 (3), (5). (15).

These clauses unquestionably give to courts of bankruptcy ample jurisdiction in the matter of provisional receiverships. For instances of the exercise of this jurisdiction, see In re John A. Etheridge Furniture Co., 92 Fed. 329, and In re Sievers, 91 Fed. 366, affirmed in Davis v. Bohle, 34 C. C. A. 372, 92 Fed. 325. Besides the express delegation of authority above quoted, courts of bankruptcy have general equity powers (Blake, Moffitt & Towne v. Francis-Valentine Co., 89 Fed. 691), and, by virtue of these general equity powers, may, in suitable cases, appoint receivers. While the bankrupt law of 1867 contained no express provision for the appointment of receivers, still the power was exercised by the courts under that law in appropriate cases. Keenan v. Shannon, Fed. Cas. No. 7,640; Lansing v. Manton, Id. 8,077.

The contention of counsel for the witness Sheldon, that so much of the order appointing the receiver as authorized him to institute actions for the recovery of the bankrupt's estate is in excess of the jurisdiction of the court, and therefore void, has no relevancy to this hearing. It is not at all essential, as I shall show later on, to the authority for the examination of said witness, that a suit should be pending, but said examination may be for purposes entirely different from those of a trial. An order for such an examination may be made on the simple application or demand of the receiver or trustee, without any showing of the questions to be asked, or the particular facts to be inquired into. In re Howard, 95 Fed. 415. If said contention, however, were material here, the argument of counsel in its support, that a receiver appointed pursuant to subdivision 3, above quoted, has no power to institute legal proceedings, but can only take charge of property voluntarily delivered to him, is, in my opinion, unsound. The duty of a receiver is "to take charge of the prop-

erty of bankrupts." If an action at law or suit in equity is necessary to the accomplishment of that purpose, the receiver not only has the power, but it is his duty, to institute such action or suit. To say that he cannot resort to legal proceedings when necessary to take charge of the property of the bankrupt, while conceding that he may employ all other suitable agencies and instrumentalities for the purpose, is wholly illogical. Legal proceedings are sometimes the only means whereby the property of bankrupts can be preserved. Suppose that an estate consists of personal property, which has come into the hands of wrongdoers, who are about to secrete it or carry it beyond the jurisdiction of the court. Can it be seriously claimed in such a case that the receiver must sit quietly by and suffer the property to be irretrievably lost, on the ground that his functions are limited to the receipt of such property as may be voluntarily surrendered to him? The statement of the claim is its refutation. I hold that it is clearly within the jurisdiction, of the court appointing a receiver in bankruptcy to authorize him to institute necessary actions for the recovery of the bankrupt's property.

2. The question whether the appointment of the receiver in the present case was providently made or not is immaterial, so far as concerns the alleged contumacy of the witness Sheldon. The order appointing the receiver being within the jurisdiction of the court, obedience to said order was and is the duty of all persons whom it affects, and disobedience thereof cannot be justified on the ground that it was erroneous. There is another aspect of the case, however, which does make the question above stated material, and it is this: If the appointment of the receiver was improvidently ordered, further proceedings thereunder ought to be arrested at once, and the order vacated. For this reason I have re-examined the petition, and am satisfied that the situation it outlines vindicates the action taken by the court thereon. It was not necessary that said petition should have disclosed absolutely grounds for equitable relief against the alleged wrongdoers. One of the objects of the appointment was to set in motion agencies of inquiry to ascertain whether or not such grounds existed. Therefore, to hold that the petition ought to have alleged the grounds would, so far as said object is concerned, practically nullify the law, which authorized the appointment to be made. Assuming the allegations of the petition to be true, which must be done on this hearing, the preservation of the bankrupt's estate seems to require an earlier investigation of the bankrupt's dealings with the Chapin-Tibbot Commercial Company than can be had through the action of a trustee regularly selected in bankruptcy. Examinations of this sort, for the purposes of ascertaining the rights and interests of the bankrupt, and perpetuating testimony for their vindication, are in some instances as essential to the preservation of the bankrupt's estate as the taking of actual possession of his property. The provisions of law for such examinations are these:

"A court of bankruptcy may, upon application of any officer, bankrupt, or creditor, by order require any designated person, including the bankrupt, who is a competent witness under the laws of the state, in which the proceedings are pending, to appear in court, or before a referee, or the judge of any state

court, to be examined concerning the acts, conduct, or property of a bankrupt, whose estate is in process of administration under this act." Bankruptcy Act 1898, § 21a.

A receiver is an officer. Id. § 1 (18).

For further provision touching the examination of the bankrupt himself, see Id. § 7 (9).

The examinations thus provided for are not intended as means of producing testimony pertinent to issues then on trial, but their object is to afford to the creditors, and the officer charged with administering the trust, full information touching the bankrupt's estate, in order that necessary steps may be taken for its possession and preservation. Coll. Bankr. pp. 205, 206; In re Earle, Fed. Cas. No. 4,244; In re Krueger, Id. 7,942; In re Lathrop, Id. 8,106; In re Stuyvesant Bank, Id. 13,582; In re Mendenhall, Id. 9,423.

In re Krueger, supra, Lowell, District Judge, said:

"In 1 Christ. Bankr. (2d Ed.) 375, the learned writer says of these examinations: 'The object in general is to compel a discovery by a confession of the party, which in every court will be evidence against himself.' In later statutes the power has generally been defined somewhat differently, but the main object and use of it have been similar. Thus, St. Mass. 1846, c. 168, § 1 (now codified in Gen. St. c. 118, § 107), and like statutes in England, authorize the courts of bankruptcy and insolvency to summon and examine persons suspected of having property of the bankrupt. In deciding a case upon the statute of 1846, Shaw, C. J., uses almost identical language with that I have quoted from Mr. Christian: 'The purpose of the statute seems to be, by a thorough investigation of the case, and an appeal to the conscience of the party suspected, to enable the assignees to judge whether they will proceed to claim such property for the general creditors, and to obtain evidence to aid them in prosecuting such claim.' Harlow v. Tufts, 4 Cush. 448, 453."

3. In view of the charges of fraud against the Chapin-Tibbot Commercial Company, I am at loss to see how it can be successfully urged that the books of said company are not within the scope of the examination authorized by law. If these charges are true, any books or documents which show or tend to show the disposition or receipt by said company of the stock of goods alleged to have been fraudulently obtained by it, or which in any other way relate to said stock, unquestionably concern the property of the bankrupt; nor can the custodian of said books be excused from their production, or answering questions in reference thereto, under a plea that the books contain nothing relating to the bankrupt's property. This matter is not left to the opinion of the witness, but must be determined by the court. The offer of counsel for the witness Sheldon to now controvert and disprove said charges, and the circumstances on which they are based, cannot be entertained. The issues thus tendered involve substantially the merits of the grounds of equitable relief which it is alleged the receiver, or trustee hereafter to be appointed, has or will have against said company, and can be properly tried only in an appropriate suit brought for that purpose.

While the refusal of the witness Sheldon to produce the cash book of the Chapin-Tibbot Commercial Company for inspection, and to answer certain questions propounded in reference thereto, was a disobedience of the order and process of this court, yet, in view of the fact that he acted under the direction of counsel, who in good faith

advised him to the course he pursued, and the further fact of his readiness, as announced by said counsel at this hearing, to submit to an examination on the matters in controversy, should the court hold such examination proper, I shall not order proceedings looking to the punishment of the witness, but simply direct his examination to be proceeded with, in conformity to the views herein expressed, at such time as the referee may appoint; notice thereof being given to the witness. For this procedure I find a precedent in Re Howard, supra, recently decided by Judge De Haven.