## In re GANT.

District Court, M. D. North Carolina.
Aug. 24, 1931.

See, also, 52 F.(2d) 220.

F. P. Hobgood and Edwin J. Martenet, both of Greensboro, N. C., for movant.

H. S. Falk and R. M. Robinson, both of Greensboro, N. C., for petitioning creditors.

HAYES, District Judge.

The moving creditor, W. N. Martin, contends that the subpœna is void, and that the service thereof is void, and moves to quash the service for these reasons, also to dismiss the petition, and, at the hearing and on brief, further contends that the petition is defective on its face to such an extent that it cannot confer jurisdiction in this court to order an adjudication thereon for the reason that it appears on the face of the petition that the claims are barred by the statute of limitation and are not, therefore, provable claims in bankruptcy.

The subpœna here is an exact copy of the official form No. 5 prescribed by the Supreme Court of the United States under Rule 38, except the caption. The form prescribed by the Supreme Court is entitled "United States of America ———— District of ————." In lieu of these words the subpœna in this case has the following: "In the District Court of the United States for the Middle District of North Carolina." I do not think the subpœna is a sufficient departure from the form prescribed to render it void, nor do I understand the case of In re Tacoma Auto Freight, Inc. (D. C.) 5 F.(2d) 752, as authority in favor of the moving creditor. In that case there was no subpœna at all, and the decision is an authority for the position that the order to show cause cannot take the place of a subpœna. In the instant case there was an order to show cause and a subpœna. To hold that the subpœna is void because of the little distinction exist-

ing in the words between the prescribed form and those employed in the subpœna here would be, in my opinion, indefensible. Such refined technicalities should not be countenanced in the administration of justice in this period where we profess eagerness for substance rather than form.

■ The subpœna was not properly served. It must be served in accordance with Equity Rule 13 (28 USCA § 723), which is as follows: "The service of all subpoenas shall be by delivering a copy thereof to the defendant personally, or by leaving a copy thereof at the dwelling-house or usual place of abode of each defendant, with some adult person who is a member of or resident in the family." Adults, at common law, and by the great weight of judicial decisions, is the antonym of infant, and means, in legal contemplation, a man or a woman over 21 years of age. In Banco De Sonora v. Bankers' Mutual Casualty Company, 124 Iowa, 576, 100 N. W. 532, 535, 104 Am. St. Rep. 367, the court said: "At common law, according to Blackstone: 'A male at the age of 12 years may take the oath of allegiance; at 14 is at years of discretion, and therefore may consent or disagree to marriage, may choose his guardian, and, if his discretion can be actually proved, may make his testament of personal estate; at 17 may be an executor; and at 21 is at his own disposal, and may alien his lands, goods, and chattels. A female also at 7 years of age may be betrothed or given in marriage; at 9 is entitled to dower; at 12 is at years of maturity, and therefore may consent or disagree to marriage, and, if proved to have sufficient discretion, may bequeath her personal estate; at 14 is at years of discretion, and may choose a guardian; at 17 may be an executrix; and at 21 may dispose of herself and her lands. So that the full age in male or female is 21 years, which age is completed on the day preceding the anniversary of a person's birth, who till that time is an infant, and so styled in law.' Thereafter they are adults. And this is the conclusion of the lexicographers and the courts generally concerning the term in its legal acceptation."

It is assumed that the United States Supreme Court, when promulgating the rule authorizing service of process on an adult residing in the dwelling house of defendant, used the word "adult" in its then prevailing meaning in legal acceptation. Undoubtedly a married daughter over 18 years of age, residing in the dwelling house of her father, in this day of advanced knowledge, ought to be constructive service to her father. Still it is not our province to construe the meaning of "adult" so as to include a married daughter under 19 years of age. The service on such a person is defective.

Mr. Gant was domiciled in the Middle district of North Carolina and had actually resided in Greensboro for a long number of years where he had been clerk of the superior court from 1914 until 1930. The records on file in this bankruptcy proceeding disclose that he misappropriated many thousands of dollars of funds which came into his hands under color or by virtue of his office. It is natural to assume that default by such person where so many interests are involved would attract widespread attention. When the petition in bankruptcy was filed, the county of Guilford, having a claim against him amounting to $12,104.85, filed an answer denying the insolvency of the bankrupt. An audit was made of the books which revealed the undoubted insolvency. Thereupon Guilford county withdrew its answer with leave of the court, and, on April 16, 1931, the order of adjudication was entered and the cause referred to Kenneth Brim of Greensboro.

■ Mr. Gant recognized the jurisdiction of the court and the service of process upon him through general appearance by reputable counsel, E. D. Broadhurst and C. L. Shuping, by applying to the referee on April 27, 1931, and, prior and subsequent thereto, to extend the time for filing schedules, and the time was extended, and E. D. Broadhurst filed a list of creditors on May 11, and again on May 14. It is true that Mr. Gant died on May 23, but notice of the creditors' meeting had been sent to the creditors, and the meeting was held on May 27, at which time the trustees in bankruptcy were elected, and Mr. Shuping, still representing the bankrupt's interests, attended the meeting and objected to the election of three trustees. It appears from the testimony of the referee that Mr. Broadhurst spoke to him shortly after the case was referred and stated that he represented Gant in this matter, and said he would file the schedules within ten days if the work could be done, and on April 27th the time was extended, because it was impossible to complete it in ten days.

The appearance of an attorney is prima facie evidence of his authority to appear in the cause, and his appearance for any purpose other than specially to attack jurisdic-

tion waives service of process on, and constitutes a general appearance by, the bankrupt. Knox & Crawford v. Summers & Thomas, 7 U. S. (3 Cranch) 496, 2 L. Ed. 510; Hill v. Mendenhall, 88 U. S. (21 Wall.) 453, 22 L. Ed. 616.

"The taking of any proceeding other than a special appearance and a motion or plea founded thereupon, is equivalent to a general appearance and a submission of the defendant's person to the jurisdiction of the Court." Foster's Federal Practice (4th Ed.) 459.

In Massachusetts Bonding & Insurance Company v. Concrete Steel Bridge Company, 37 F.(2d) 695, 701, this Circuit Court said: "If the defendant invoke the judgment of the court in any manner upon any question, except that of the power of the court to hear and decide the controversy, his appearance is general. There are cases where the defendant may make a quasi appearance for the purpose of objecting to the manner in which he is brought before the court, and in fact to show that he is not legally there at all, but if he ever appears to the merits he submits himself completely to the jurisdiction of the court and must abide the consequences." Also see Brookings State Bank v. Federal Reserve Bank of San Francisco (D. C.) 291 F. 659.

The appearance after judgment waives any defect in the service. Glenn v. Mitchell (C. C. A.) 282 F. 440; Mandel Bros. v. Victory Belt Co. (C. C. A.) 15 F.(2d) 610.

■ The trustees qualified and, on June 2, 1931, filed a petition with the referee for an order requiring the United Bank & Trust Company, receiver, appointed by the superior court of North Carolina, to show cause why the assets of Gant in its possession should not be turned over to the trustees. This creditor waited until June 12 to enter his special appearance and move to vacate the order of adjudication. In my opinion he is not entitled to relief. Had the subpœna been served in the manner and form required by law, the creditor would have been allowed but five days in which to file an answer. No sufficient reason is assigned here why Mr. Martin did not file an answer within five days of the purported service, but Gant evidently recognized the service on him as valid and employed counsel to represent him in it, and counsel, both able and honorable, and thoroughly conversant with his affairs, did not see fit to question the service or to challenge jurisdiction of the court. Presumably the bankruptcy was agreeable to the bankrupt for he stated to Mr. Broadhurst that he knew about it and thought it was best.

The cause was referred to Mr. Brim on April 16, and, while the testimony of Mr. Brim is not clear as to the exact date when Mr. Broadhurst stated that he and Mr. Shuping represented the bankrupt, yet it is manifest that this occurred between April 16 and April 27, for he agreed that he would file schedules within ten days at this first conference, whereas it appears that he later came before the referee and stated that it was not possible to get the work completed within the time required and asked for an extension of time, which was granted on April 27, 1931. The order was entered in the bankruptcy proceedings on that date in the office of the referee. As I see it, this was notice to all of the creditors that the bankrupt recognized the jurisdiction of the court and the validity of its adjudication and his willingness to comply therewith in a manner as full and complete as if there were proper service of the subpœna on that date. If a creditor can have only five days after the return date of the subpœna in which to file an answer, why should he be given an indefinite time to do so? Where a subpœna has been defectively served and the bankrupt voluntarily appears in the court and abides by its decision, why should this creditor wait from April 27th to June 12th before taking action? Why did he stand by on May 27th and permit the election of trustees without moving then, and why did he wait ten days after the trustees had moved before the referee for an order requiring the state receiver to turn over the Gant assets to the trustees? These are questions which the moving creditor leaves unanswered.

■ The records before the referee disclose the filing of 192 claims totaling $191,349.90, principally for funds misappropriated by the bankrupt as clerk of the superior court of Guilford county. Among the claimants is the state of North Carolina, whose claim amounts to $90,519.44. Many of these claims are for funds belonging to widows and orphans, many of whom are in desperate need. One creditor whose claim is for $200, and whose claim occupies the status of many others which have been filed in this bankruptcy proceedings, should not be permitted to vacate the order of adjudication unless his motion is sustained upon substantial grounds. I do not think substantial grounds have been shown here, and I do not believe that the

court ought to quash the service and vacate the adjudication for the reasons assigned.

While the court, without conceding the right to the petitioning creditors to raise the question of the sufficiency of the petition, would, on its own motion, vacate an adjudication if the petition on its face showed that the court was without jurisdiction, still the petition here is not void on its face, for the petition shows an indebtedness to the bankrupt's creditors whose claims aggregate the requisite amount, and it further appears from the petition that the bankrupt is due the creditors these sums of money which came into his hands under color and by virtue of his office as clerk of the superior court of Guilford county. The dates when the clerk received these funds are set forth in the petition, but no statute of limitation begins to run in favor of the clerk from the date he receives the money in trust. A suit against the clerk on his official bond may be maintained within six years under the statute of North Carolina, and in cases of fraud a suit may be brought within three years from the discovery of the fraud. The petition does not warrant the assumption that the petitioning creditors made a demand upon the clerk to pay over these funds the day that he received them, and that they then and there discovered that the clerk had misappropriated said funds. The Supreme Court of North Carolina had occasion to deal with the statute of limitation in regard to the claim of the state of North Carolina against Mr. Gant and his surety in a recent case of State of North Carolina et al. v. M. W. Gant and Aetna Casualty & Surety Co., 201 N. C. 211, 159 S. E. 427. Recovery of the state against the surety company was sustained there on bonds executed in 1914 and every four years thereafter, notwithstanding the plea of statute of limitations, on the ground that the fraudulent conduct of Mr. Gant in misappropriating and misapplying trust funds was not discovered until 1930.

If this court is correct in holding that the petition is sufficient to support the adjudication, as to which it entertains no doubt, then the proceeding does not abate upon the death of the bankrupt, and, if the service were quashed and subpœna issued to the bankrupt's heirs, no useful purpose could be served by the delay. 1 Rem. 102; Shute v. Patterson (C. C. A.) 147 F. 509; In re Stein (C. C. A.) 105 F. 749; New Jersey v. New York, 3 Pet. 461, 7 L. Ed. 741; Meek v. Banking Co., 268 U. S. 426, 45 S. Ct. 560, 69 L. Ed. 1028.