In the Matter of OAKLAND POPCORN
SUPPLY, INC., a California corpora-
tion, doing business under the name of
California Popcorn-Peanut Supply, Inc.,
Bankrupt.

No. 63181.

United States District Court
N. D. California, S. D.

Jan. 11, 1963.

Henry Gross, Francis P. Walsh, San Francisco, Cal., for petitioners Glen D. Neece and Mazie M. Neece.

J. Robert Friborg, Edwards & Friborg, Oakland, Cal., for petitioning creditor.

ZIRPOLI, District Judge.

Glen D. Neece and Mazie M. Neece, stockholders in the bankrupt corporation, seek review of the Referee's order of June 8, 1962 denying their petition to dismiss this bankruptcy proceeding. Because of the unusual posture in which this proceeding comes before the Court, a somewhat detailed account of its procedural history is a prerequisite to consideration of the issues tendered on this review.

This proceeding was initiated on July 12, 1961 by an involuntary petition filed by L. Cotter, a creditor of the bankrupt by reason of an assignment to him of the claim of Vogel & Son Popcorn Company in the amount of $9,007.50 for popcorn supplied to the bankrupt. The petitioning creditor alleged on information and belief that the number of creditors of the bankrupt was less than twelve. He alleged two acts of bankruptcy: (1) that the bankrupt had on July 7, 1961, while insolvent, permitted a creditor to obtain a lien upon its property and had failed to have it vacated or discharged, although the property was to be sold by the Sheriff on July 14, 1961; and (2) that the bankrupt had on July 10, 1961 admitted in writing its inability to pay its debts and its willingness to be adjudged a bankrupt.

Because a copy of the bankrupt's written admission of its inability to pay its debts and its willingness to be adjudged a bankrupt was attached to the petition as an exhibit, the Deputy Clerk who filed the petition erroneously treated it as a voluntary petition. He advised counsel for the petitioning creditor that service of a subpoena upon the bankrupt was unnecessary, stamped the petition "adjudicated" and referred it to the Referee. Since the Deputy Clerk stamped the petition "adjudicated" as of the date of filing, it should have been evident to the Referee that there could not have been an adjudication in accordance with the requirements of the Bankruptcy Act or the uniform practice of this Court to refer involuntary petitions to the Referee for adjudication.

However, the Referee proceeded with the administration of the bankrupt's estate as though a decree of adjudication had been regularly entered. The day following the filing of the involuntary petition, the Referee caused to be mailed to the president of the bankrupt corporation an order directing the filing of Schedules within 10 days and a Statement of Affairs within 20 days. On July 20, 1961, upon the petition of the creditor L. Cotter, the Referee entered an order appointing a Receiver for the bankrupt's estate. The Receiver took possession of the personal property of the bankrupt, and on September 7, 1961

sold all or most of it at public auction. On September 13, 1961, the Referee caused to be mailed to the president of the bankrupt a second order directing the filing of Schedules and a Statement of Affairs. On October 12, 1961, no response having been made to the two orders directing the filing of Schedules and a Statement of Affairs, the Referee served the president of the bankrupt by mail with an order to show cause why he should not be certified to a judge of this court for contempt. Delivery of this order was refused, but on October 17, 1961, prior to the return date, the bankrupt's president filed a Statement of Affairs unaccompanied by Schedules.

On December 27, 1961, the Referee issued a second order directing the bankrupt's president to show cause why he should not be certified to a judge of this court for contempt. On February 5, 1962, the bankrupt's president finally filed Schedules. The Referee promptly mailed notice of the First Meeting of Creditors to be held February 21, 1962 to all creditors listed on the Schedules. At this meeting, the creditors elected as Trustee the person who had theretofore acted as Receiver. On March 1, 1962, the Referee entered an order approving the appointment of attorneys for the Trustee.

Before any further action was taken by the Referee, the two stockholders of the bankrupt, Glen and Mazie Neece, filed a petition addressed to the judges of this court, praying for an order directing the petitioning creditor and the Receiver to show cause why the proceeding should not be dismissed. Judge Sweigert issued the requested order to show cause, but specified that it was returnable before the Referee. Accordingly, a hearing was had by the Referee on May 15, 1962. On June 8, 1962 the Referee entered the order which is now before this Court for review. By this order he denied the request of the bankrupt's stockholders to dismiss the proceeding. He also adjudged all proceedings subsequent to the filing of the involuntary petition to be null because of the lack of a decree of adjudication, and directed the Clerk of this Court to forthwith issue a subpoena for service upon the bankrupt.

Two preliminary matters must be disposed of before considering the merits of the Referee's order. The first is the contention made by the Referee in his certificate that the bankrupt's stockholders have no standing to petition for review of his order. The two cases cited by the Referee are not apropos, as pointed out by counsel for the petitioning stockholders. While it is true that stockholders of a bankrupt corporation have no statutory right to contest an involuntary petition, it is within the discretion of the bankruptcy court to permit them to do so. In re National Republic Co., 109 F.2d 167 (7 Cir. 1940); In re Super Vent Window Co., 52 F.Supp. 356 (S.D. Fla.1943); In re Henry Klein & Co., 1 F.Supp. 376 (E.D.N.Y.1932). Under the present circumstances where it is evident that the purported president of the bankrupt was not properly representing the interests of the corporation, it was a proper exercise of discretion to entertain the petition of the stockholders to dismiss the proceeding. The Referee having ruled on their petition, the stockholders obviously have standing to seek a review of his decision.

The second preliminary matter is the contention of the petitioning stockholders that Judge Sweigert referred their petition to the Referee as Special Master, not as Referee, and that he should merely have reported his findings to the Court without entering any order. This contention is wholly lacking in substance. Upon the filing of the involuntary petition, the Deputy Clerk properly referred it to the Referee under Section 22, sub. a of the Bankruptcy Act, as amended, despite the fact that he erroneously stamped it "adjudicated". General Order 12(1) specifies that after a proceeding has been referred to the Referee "thereafter all the proceedings, except such as are required by the Act or by these general orders to be had before the judge, shall be had before the referee." In addition, Rule 63 of this Court

668

(formerly Bankruptcy Rule 3) provides that "After a proceeding has been referred generally to a Referee, all applications for orders within the Referee's jurisdiction shall be made to the Referee, except as otherwise provided in Rule 70a (formerly Bankruptcy Rule 10a) of this Court. The judges shall refuse to hear such applications unless the Referee is absent and no other Referee is available." Counsel for the petitioning stockholders erred in failing to address the application for an order to show cause to the Referee in the first instance. In directing that the order to show cause be returned before the Referee, Judge Sweigert was not making a special reference but was merely recognizing the general reference that had already been made and respecting General Order 12(1) and Rule 63 of this Court.

■ Turning to the merits of the Referee's order, he was clearly correct in denying the request of the petitioning stockholders for dismissal of the proceeding, the involuntary petition being sufficient on its face to satisfy jurisdictional requirements. Blue Valley Creamery Co. et al. v. Stone, 80 F.2d 483 (3 Cir. 1935); Joseph I. Shapiro, Inc. v. Allman & Olins, Inc., 84 F.2d 964 (1 Cir. 1936); In re Lewis, 91 F. 632 (S.D.N.Y.1899); Matter of David Frischberg, 8 Am.B.Rep. 607 (Ref.S.D.N.Y.1902).

■■ It is true that the petitioning creditor, whose claim rested upon an assignment from another, failed to annex to the petition an affidavit supplying the information concerning the assignment required by General Order 5(2). But, the stockholders have cited no authority and the Court is aware of none which holds such defect to be jurisdictional. The purpose of General Order 5(2) is to provide the Court with information which will aid it in ascertaining that the petitioning creditors are bona fide and have not obtained their claims for purposes of oppression. Reed v. Thornton, 43 F.2d 813 (9 Cir.1930); In re Sharp Bros., Inc., 2 F.Supp. 227 (Mont. 1933); In re Pickering Lumber Co., 1 F.Supp. 82 (W.D.Mo.1932). But, the jurisdiction of the Court to entertain the petition is not dependent upon any of the facts which General Order 5(2) requires to be set forth in the affidavit.

■ The stockholders urge that the involuntary petition was defective in that it did not show that the bankrupt's president had authority to bind the corporation by his written admission that it was unable to pay its debts and was willing to be adjudged a bankrupt. However, the question of authority to make the admission on behalf of the corporation is an evidentiary matter. In re Crystal Ice & Fuel Co., 283 F. 1007 (D.C. Mont.1922); In re Gold Run Mining & Tunnel Co., 200 F. 162 (D.C.Colo.1912); In re Marine Machine & Conveyor Co., 91 F. 630 (S.D.N.Y.1899). The authority need not be conclusively shown on the face of the petition. Moreover, the absence of a showing in the present petition of corporate authority to make the admission could not in any event render the petition insufficient, inasmuch as it alleged an additional act of bankruptcy.

■ The stockholders note that when the bankrupt eventually filed Schedules, they showed that its creditors numbered more than twelve and that consequently three creditors are required to petition for adjudication. The lack of the required number of petitioning creditors may be remedied, however, by the intervention of additional creditors pursuant to Section 59 of the Bankruptcy Act and does not render the original petition ineffective to initiate the proceeding.

■ The portion of the Referee's order of June 8, 1962, adjudging that all of the proceedings subsequent to the filing of the petition are null is clearly erroneous. As has been noted, the immediate reference by the Clerk to the Referee was a normal step authorized by Section 22(a) of the Bankruptcy Act. The Referee's order restraining the threatened Sheriff's sale of the bankrupt's property was of course effective despite the fact that no decree of adjudication had yet been entered. Such injunctive relief is a common and proper

procedure pending adjudication. In re Mitchell, 278 F. 707, 709 (2 Cir. 1922); In re Oxley et al., 182 F. 1019 (W.D. Wash.1910). Adjudication was not a prerequisite to the appointment of the Receiver and his attorneys or to his sale of the bankrupt's property, although such action is not common nor usually warranted prior to adjudication. In re McNary, 83 F.Supp. 121 (N.D.N.Y.1949); In re Lake Nursery Co., C.C.H. Dec. 1935 P 3749 (D.C.Fla.); In re T. L. Kelly Dry-Goods Co., 102 F. 747 (E.D. Wis.1900); In re Fixen & Co., 96 F. 748 (S.D.Calif.1899).

It is not appropriate upon this review to attempt to appraise the effect upon all aspects of the proceedings of the failure to serve the bankrupt with a subpoena or to enter a decree of adjudication. This question has not been adequately presented either to the Court or to the Referee. Upon remand, the Referee should fully explore the matter and should have the assistance of the experienced counsel for the Trustee, the validity of his appointment being one of the issues for determination. In particular, the Referee should consider whether the bankrupt's appearance by the filing of Schedules and a Statement of Affairs subjects it to the jurisdiction of the Court and whether a decree of adjudication may fairly and lawfully be entered nunc pro tunc.

In this connection it should be noted that the Court agrees with the view expressed by the Referee in his order that no weight can be given the case of In re Tacoma Auto Freight, Inc., 5 F.2d 752 (W.D.Wash.1925) relied upon by the petitioning stockholders as authority that service of a subpoena upon the bankrupt is a jurisdictional essential that cannot be waived. The rationale of that decision has been rendered obsolete by the amendment to the Bankruptcy Act eliminating the statutory right of creditors to contest an involuntary petition. The Referee's attention is directed to the following cases dealing with the subject of waiver of service or defective service by the appearance of the bankrupt.

Alaska Smoked Fish Co. v. Fairmont Creamery Co., 108 F.2d 959 (6 Cir. 1940); Marcus et al. v. Pillsbury Flour Mills Co. et al., 4 F.2d 536 (3 Cir. 1925); In re Gant, 52 F.2d 223 (M.D.N.C. 1931); In re Western Investment Co., 170 F. 677 (E.D.Okla.1908); In re Smith, 117 F. 961 (D.C.Conn.1902); Matter of David Frischberg, 8 Am. Bankr.Rep. 607 (Ref.S.D.N.Y.1902).

It is ORDERED that the portion of the Referee's Order of June 8, 1962 denying the petitioning stockholders' request for dismissal of this proceeding is affirmed; the portion of his Order adjudging all proceedings subsequent to the filing of the involuntary petition null is vacated; and the cause is remanded for further proceedings in accordance with the instructions herein.