## DAVIS v. BOHLE et al.

### (Circuit Court of Appeals, Eighth Circuit. February 13, 1899.)

#### No. 12.

1. BANKRUPTCY—EFFECT ON ASSIGNMENT FOR CREDITORS.

Under Bankruptcy Act 1898, § 3, declaring that it shall be an act of bankruptcy if a person shall have "made a general assignment for the benefit of his creditors," such an assignment is voidable at the instance of creditors; and, if proceedings in bankruptcy are instituted against the assignor within four months thereafter, an adjudication therein will avoid the assignment, and the trustee in bankruptcy may recover the assigned estate, or its proceeds, from the assignee.

2. SAME—PROPERTY IN POSSESSION OF VOLUNTARY ASSIGNEE.

Where a debtor has made an assignment of his property for the benefit of his creditors, and a petition in bankruptcy is filed against him, alleging such assignment as an act of bankruptcy, and his assignee is in possession of the estate, has had the same appraised, and is about to make sale thereof, the court of bankruptcy has jurisdiction to enjoin such assignee from proceeding further with the administration of the estate, and to appoint the marshal to take charge of the property assigned, and to hold the same until the dismissal of the petition or the appointment of a trustee.

Petition for Review of a Decision of the United States District Court for the Eastern District of Missouri in Bankruptcy. In re Sievers, 91 Fed. 366. Affirmed.

Chester H. Krum, for petitioner.

William E. Fisse (Henry Kortjohn, on the brief), for respondents.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This is an original proceeding in this court; the same being a petition filed under section 24 of the bankrupt act, approved July 1, 1898, to review the action of the district court of the United States for the Eastern district of Missouri in a certain bankruptcy case pending in that court. Attached to the petition for review is a transcript of the record of the district court, embodying the order which is claimed to have been erroneous. From such transcript it appears that on December 6, 1898, Charles F. Sievers, at the city of St. Louis, executed a voluntary deed of assignment in favor of Henry B. Davis, the petitioner, covering all his property and effects, and for the equal benefit of all of his creditors, pursuant to the laws of the state of Missouri regulating voluntary assignments (Rev. St. Mo. 1889, c. 8); that on the same day the petitioner filed his bond as assignee, and took possession of the assigned property and effects, consisting of a stock of groceries, accounts, and other personal property, and certain real estate; that in due season the assignee caused appraisers to be appointed and an inventory to be taken, in accordance with the local law, and that he also obtained from the proper state court permission to sell the assigned property and effects; and that a sale was thereupon advertised by the assignee to be held on December 30, 1898. On December 17, 1898, certain creditors of Sievers, the assignor, filed a petition in bankruptcy against him in the district court of the United

States for the Eastern district of Missouri, counting upon the aforesaid assignment as an act of bankruptcy. On December 24, 1898, the same creditors petitioned the district court to enjoin the assignee from further proceeding under the deed of assignment to administer upon the estate of the insolvent debtor. A hearing having been had on said petition, after due service of process upon the assignee, at which hearing the assignee appeared and made defense, the district court awarded an injunction as prayed for by the petitioning creditors, and further entered an order directing Louis C. Bohle, the marshal for the Eastern district of Missouri, and one of the respondents, to take possession of the assigned property and effects, and hold them subject to the further order of the court. This latter order is alleged by the petitioner to have been erroneous,' and this court is asked to annul the same, and to direct the restoration of the property to the assignee named in the deed of assignment, to be administered by him pursuant to the laws of the state of Missouri regulating voluntary assignments.

The main contention on the part of the assignee is that the deed of assignment executed December 6, 1898, vested him with an indefeasible title to the assigned property, and that he is entitled to administer upon the same pursuant to the laws of the state, notwithstanding the commencement of proceedings in bankruptcy against his assignor. This contention is based on the ground that the local assignment law was neither superseded nor suspended in its operation by the enactment of the recent bankrupt act, because the local assignment law does not permit preferences, nor provide for the discharge of insolvent debtors, when they shall have surrendered their property for the benefit of their creditors, and because all assignments made under the local law are purely voluntary. Ogden v. Saunders, 12 Wheat. 213; Mayer v. Hellman, 91 U. S. 496; Boese v. King, 108 U. S. 379, 2 Sup. Ct. 765; Manufacturing Co v. Hamilton (Mass.) 51 N. E. 529.

It is further urged that congress must have intended by the recent bankrupt act to permit an assignee in a deed of assignment which is executed under such a law as prevails in Missouri to administer upon the assigned estate committed to his charge, pursuant to the local law, because the bankrupt act fails to declare in express terms that such deeds of assignment shall be deemed void, as to creditors of the assignor, if he is subsequently adjudged a bankrupt, or to provide that the trustee in bankruptcy may recover the assigned property and effects from the assignee. We are of opinion, however, that this latter contention is untenable, for the reason that it fails to give due effect to that clause of section 3 of the bankrupt act which declares, in substance, that the making of a general assignment for the benefit of creditors shall be "an act of bankruptcy." This was but another form of saying that if a person, subject to the provisions of the act, should make a general assignment, it should entitle his creditors to have him adjudged a bankrupt within four months after the commission of the act; and to have his estate administered by a trustee or trustees of their own selection, pursuant to the provisions of the act, rather than by the assignee who had been chosen by the insolvent debtor for that purpose. Inasmuch as an assignee under

a voluntary deed of assignment is not a purchaser for value of the assigned property, but is merely an agent or trustee of the assignor and his creditors, and holds the assigned property solely for their benefit, congress, when it provided that a general assignment should be regarded as an act of bankruptcy, did not deem it necessary to say further, and in so many words, that the assigned property might be taken from the custody of the assignee at the instance of creditors, if the assignor was subsequently adjudged a bankrupt. It was assumed, no doubt, that by declaring a general assignment to be an act of bankruptcy, with all which that declaration implied, the assignee named in such a deed would take a defeasible title to the assigned property, which would instantly fail when the assignor was adjudged a bankrupt, and that he would thenceforth be accountable to the trustee appointed in the bankruptcy proceedings for the assigned property or its proceeds. Such, we think, is the necessary effect of the clause making a general assignment an act of bankruptcy, when that clause is read in the light of decisions both in this country and England construing prior bankrupt laws, which decisions must be presumed to have been well known to the lawmaker. Thus, under an English bankrupt act (6 Geo. IV. c. 16, § 3), which made it an act of bankruptcy if a person executed any fraudulent conveyance or transfer with intent to defeat or delay his creditors, it was repeatedly held that a voluntary assignment by a debtor of his whole estate for the equal benefit of all his creditors was an act of bankruptcy, within the meaning of the aforesaid statute, not because such a conveyance was fraudulent in fact, but because it was constructively fraudulent, and in violation of the bankrupt act, in that it provided for a different mode of administration upon the effects of the insolvent debtor than that contemplated by the act. Stewart v. Moody, 1 Cromp. M. & R. 777; Barnes v. Rettew, 2 Fed. Cas. 868, and cases there cited. The same view, in substance, was taken with respect to our own bankrupt law of March 2, 1867 (14 Stat. 517, c. 176). The thirty-ninth section of that act declared, in substance, that if one who was insolvent, or in contemplation of insolvency, should make any gift, grant, sale, conveyance, or transfer of his property, with intent by such disposition thereof to defeat or delay the operation of the act, he should be deemed to have committed an act of bankruptcy; and it was repeatedly held that a general assignment by an insolvent debtor for the equal benefit of all his creditors was an act of bankruptcy, within the meaning of this provision, because of its tendency to defeat or delay the operation of the act by providing a different method of administration than that contemplated by the act, and that the same conclusion would have followed in view of the English decisions construing the English bankrupt act, from which ours was in part borrowed, even if our act had stopped with the single declaration that conveyances by an insolvent debtor with intent to delay, defraud, or hinder his creditors should be deemed an act of bankruptcy. Barnes v. Rettew, supra; In re Beisenthal, 3 Fed. Cas. 76; Globe Ins. Co. v. Cleveland Ins. Co., 10 Fed. Cas. 488, and cases there cited; In re Burt, 1 Dill. 439, Fed. Cas. No. 2,210. We think, therefore, that when congress declared, as in the recent bankrupt law, that a general

assignment for the benefit of creditors should be deemed an act of bankruptcy, it said, in effect, that conveyances of that nature are opposed to the policy of the national bankrupt act, in that they interfere with the course of administration which that act contemplates, and tend, in a measure, to defeat its operation, and that creditors of the assignor shall be entitled to treat such assignments as void, if, within the period named in the act, they so elect.

The view last expressed (that whatever title an assignee acquires by a deed of general assignment is rendered null and void, if his assignor is subsequently adjudged a bankrupt within the statutory period) is strongly reinforced by the further consideration that if such is not the result of the adjudication, and if the contention made in the present case prevails, then the creditors of a person who makes a general assignment will derive little or no benefit from the commencement of bankruptcy proceedings against him, since such proceedings, if instituted, will only result in a discharge of the insolvent debtor. If it be held that the assignee named in a deed of general assignment is entitled to hold the property committed to his charge, and administer the same pursuant to local laws, although the assignor is adjudicated a bankrupt, then the singular, not to say absurd, result will follow, that the creditors of the assignor will be deprived of the benefit of all the provisions of the national bankrupt act which relate to the disposition, control, and management of bankrupt estates. In other words, a law which was intended in part, at least, for the benefit of creditors, will be rendered practically valueless, as to them, in those cases where the debtor makes a general assignment. It is one of the fundamental rules for the construction of statutes that they should receive a sensible interpretation, and that a construction should always be avoided which in its practical operation tends to defeat any of the purposes of the statute, or which leads to an absurd consequence. Exceptions may be presumed, or words omitted or supplied, when it is necessary to accomplish the obvious intent of the lawmaker and to prevent injustice or oppression. U. S. v. Kirby, 7 Wall. 482; Heydenfeldt v. Mining Co., 93 U. S. 634; Church of Holy Trinity v. U. S., 143 U. S. 457, 460, 461, 12 Sup. Ct. 511; Scott v. Latimer, 33 C. C. A. 1, 89 Fed. 843; Thurber v. Miller, 32 U. S. App. 209, 14 C. C. A. 432, and 67 Fed. 371. We feel confident that congress did not intend by the recent bankrupt act to commit the administration of any insolvent estate to an assignee chosen by the bankrupt, who should be free from the control of the bankruptcy court having jurisdiction over the person of the bankrupt, or to deprive the creditors of a bankrupt in any case of those rights and remedies that have been carefully provided by congress to secure a faithful, economical, and uniform management of bankrupt estates. It follows, therefore, that a construction of the act which would lead to the aforesaid results should be rejected.

It is proper to add that the question at issue in this case, besides having been carefully considered by the trial court (In re Sievers, 91 Fed. 366), has been recently considered, in an elaborate opinion, by Judge Brown, of the Southern district of New York, in Re Gutwillig, 90 Fed. 475, 480. In the latter case it was held (and we find no

occasion to question the soundness of that view) that the provisions of section 70 of the recent bankrupt act are in themselves sufficient to vest the trustee in bankruptcy, when appointed, with the title to property of the bankrupt held by an assignee under a general assignment for the benefit of creditors, executed, as in this case, prior to proceedings in bankruptcy, if an adjudication subsequently follows within the statutory period of four months. That section declares, in substance, that the trustee shall be vested by operation of law with the title of the bankrupt to "property transferred by him in fraud of his creditors"; and, as Judge Brown well observes, the fraud therein referred to is not limited to frauds arising, as at common law, from the intent of the bankrupt, but comprehends as well those constructive frauds which consist in making conveyances like a general assignment, which, if suffered to stand, will impair substantial rights conferred on creditors by the bankrupt law,—such as the right to have the estate administered by a trustee of the creditors' own choice, and under and subject to the provisions of the act and the control of the proper bankruptcy court.

In conclusion, it is only necessary to say that the trial court, in our judgment, pursued the proper course and took the proper steps to recover the assigned property from the assignee, and preserve it for the time being until the assignor had been adjudicated a bankrupt, and a trustee had been selected by the creditors. Full warrant for all that was done in this respect is to be found in section 2 of the act, which empowers courts of bankruptcy, in substance, to appoint receivers or marshals, upon application of parties in interest, to take charge of the property of bankrupts after the filing of petitions against them, for the preservation of their estates, and to make such orders, issue such process, and enter such judgments as may be necessary for the enforcement of the provisions of the act. The regularity of the proceedings taken by the lower court, in our judgment, cannot be successfully criticised. The case before us being a petition to review the action of the trial court, it results from what has been said that the petition for review must be dismissed, and the action of the district court stand approved and confirmed. It is so ordered.