In re KRINSKY et al.

(District Court, S. D. New York. February 7, 1902.)

INJUNCTION—VIOLATION—SERVICE OF ORDER—NECESSITY.

Service of a copy of an injunction issued by a bankruptcy court, restraining the assignee for creditors of the bankrupt and others from disposing of his property, was unnecessary in order to put them in contempt for a violation thereof, where they were otherwise advised of its issuance.

In Bankruptcy.

Henry Lesser, for the motion.
Abraham D. Levy, opposed.

ADAMS, District Judge. This is a motion on the part of the receiver appointed by the court to punish for contempt Joseph J. Harris, Simon Wang, and Abraham D. Levy. On the 14th day of January, 1902, a petition was filed herein by three alleged creditors to have Hiram Krinsky and Abraham Krinsky, composing the firm of Krinsky Bros., adjudged bankrupts. The petition contained the necessary allegations to sustain the prayer for an adjudication, among others that the alleged bankrupts had made a general assignment for the benefit of creditors, on the 6th day of January, 1902, to Joseph J. Harris. On the same day a petition on behalf of the creditors was filed asking for an injunction against Harris and others

on the grounds that the bankrupts had removed from their place of business considerable property to various other places, for the purpose of secreting the same, and there was danger that such as was there in their possession would also be removed and secreted, and, further, that the said Harris was about to dispose of the property under the assignment to him. An order was accordingly issued on the same day, directing "that Joseph J. Harris, the assignee of the said alleged bankrupts and every other person or persons who may have in his or their possession any property belonging to the said alleged bankrupts, be, and each of them hereby is, enjoined and restrained of and from interfering with, or disposing of, any of the said property, except to economically preserve the same, until the further order of this court." It is alleged in the affidavits upon which the motion is based that late in the evening of the same day, and too late to obtain certified copies of the restraining order, Mr. Lesser, attorney for the creditors, was informed that the assignee had advertised that the property remaining in the possession of the bankrupts at their two places of business, No. 232 Christie street and 318 East Ninth street, was to be sold by the assignee at auction on the morning of the next day, January 15th, and he went to No. 232 Christie street, and found there the said Wang, who claimed to be an auctioneer in charge of the said place, and the said Levy, who claimed to represent the assignee of the said sale; that the said Lesser then notified the said persons that a restraining order was on file with the clerk of this court, restraining the assignee and any other person from interfering with the property of the alleged bankrupts; that neither of said persons paid any attention to what said Lesser said, but Levy instructed the auctioneer to proceed with the sale; that Lesser telephoned to his office to have his clerk obtain certified copies of the restraining order, and serve one on the assignee and the other on the auctioneer; that Lesser then returned to the place of sale, and remained until all the property had been disposed of there, and in the meantime received a copy, not certified, of the restraining order, and served it on Wang in the presence of Levy, whereupon Levy asked him to show Wang the original order, to which Lesser replied it was not in his possession, but was on file with the clerk of the court, whereupon Wang took the copy of the restraining order, and threw it upon the sidewalk in front of the place of said sale, and told Lesser that he did not care for any restraining order, and that he was going to No. 318 East Ninth street to dispose of the property there; that the clerk, upon Lesser's said instructions, went with a copy of the order to the said place on Ninth street, and handed it to Wang while he was in the act of offering the goods for sale; that Wang took it, read it, and said it was served too late, and he would go on disposing of the goods, which he did; that another clerk of Mr. Lesser served a copy of the order upon Harris at his office about 11 o'clock in the morning of the day of the sale, who said it should have been served earlier, and, though advised that the goods had not been removed from the premises, refused to act in the matter.

Opposing affidavits are presented by the implicated parties. Har-

ris says that on the 14th of January, 1901, he obtained an order for the sale of the goods from the state court on the ground that dispossess proceedings were pending, and that an immediate sale was necessary to preserve the property, and he denied any knowledge of the restraining order until it was served on him the morning of the 15th, after the sale was finished. Levy says the same with respect to the proceedings on the 14th to obtain the order of sale, and that:

"At about half past nine o'clock on January 15, 1902, deponent and his clerk, Mr. Samuel L. Goldstein, and the auctioneer, Mr. Saml. Wang, together with his help, arrived at 232 Christie street, and immediately started to auction off the various lots of goods, and, as there were but few lots to be disposed of, the same was disposed of very quickly, and a greater part of the same lots delivered to the various purchasers, when Mr. Lesser came upon the scene, and told the auctioneer and deponent that he had a restraining order from the United States court restraining the progress of the sale; that said Henry Lesser did not have or serve upon deponent or upon the auctioneer at that time any copy of such order, nor exhibit an original restraining order; and deponent said to Mr. Lesser: 'Mr. Lesser, I am too long in practice myself, and I know some of your tricks,—you practice. If you want me to stop this sale, and wait until a marshal will come with a replevin from some district court, you will have a good time waiting. You show me an order from the U. S. court, and I will obey it forthwith; otherwise, I will pay no attention to you.' Mr. Lesser did not produce any order from any court, and deponent, believing Mr. Lesser's conduct simply an attempt to hold up the proceedings until some one arrived with replevin proceedings, ordered the sale to go on. From there deponent and the auctioneer and Mr. Goldstein proceeded to the 9th street store, and also immediately started with the sale of the two lots in said premises, and in the course of about ten or fifteen minutes, there only being two lots in the 9th street store for sale, the property was sold to the highest bidder, and brought $40.00 more than was valued by the assignee before such sale. After the sale and the removal of the property in said 9th street store, and about a minute or two before deponent left said store, a clerk from the office of Mr. Lesser came to said store, and exhibited a copy of a paper purporting to be a copy of the restraining order. Deponent looked at said paper, and, seeing no judge's signature attached thereto, asked to see the original or a certified copy of the original restraining order. Said clerk not having either with him, deponent, the auctioneer, Mr. Wang, and said Mr. Goldstein left the 9th street store and departed for the respective places."

Wang refers to the affidavit of Levy, and says it is true, and others of the parties present say the same.

Assuming that the statements in the moving affidavits relating to a service of a copy of the order upon Wang in the presence of Levy, while the sale was proceeding, are overcome by the opposing affidavits, the situation remains that, though notified verbally of the existence of the order, Levy and Wang refused to obey it. The excuse offered for such disobedience is that they believed Lesser's notification was a trick on his part. Such excuse is inadmissible. Levy is an attorney of this court, and he, at least, must have known that since the bankruptcy law came into existence the United States courts have exclusive jurisdiction of insolvent estates upon proper proceedings being instituted, and when his attention was called to the issuance of a restraining order by the bankruptcy court it was his immediate duty to have obeyed it or have suspended pro-

ceedings under the order of sale made by the state court until he positively ascertained that the statement made by Lesser was untrue. An inquiry could easily have been made by telephone to the court, and the truth ascertained in a few minutes. Levy was notified by an officer of the court that the order had been granted, and he was bound to take immediate notice of that fact. It is not necessary that he should have been served with a copy of the order, if knowledge of its contents came to him otherwise. High, Inj. §§ 1421–1424. He knew, or should have known, also, that the assignment to Harris was constructively fraudulent, because in violation of the bankruptcy act, and became void when creditors invoked the jurisdiction of this court. Davis v. Bohle, 34 C. C. A. 372, 92 Fed. 325; Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814. The filing of the petition was a caveat to all the world. It was, in effect, an attachment and injunction. Those who deal with bankrupts' property in the interval between the filing of the petition and the final adjudication do so at their peril. Bank v. Sherman, 101 U. S. 403, 406, 25 L. Ed. 866; Mueller v. Nugent (U. S. Sup. Ct., Jan. 20, 1902) 22 Sup. Ct. 269, 46 L. Ed. ——, and the moment it was suggested to Levy that proceedings had been instituted in this court it was his duty to have paused, and ascertained the status of the matter. Instead of doing so, he indulged in the practice of taking advantage of a supposed immunity arising from Lesser's failure to serve certified copies of the order. Such disobedience of the court's order cannot be tolerated for a moment. In re South Side R. Co., 7 Ben. 391, Fed. Cas. No. 13,-190; In re Atkinson, 7 N. B. R. 143, Fed. Cas. No. 606.

The contemnor, Levy, will be fined $200, and, if the fine is not paid within 10 days after service of an order hereon, he will be committed until it is paid.

Wang's misconduct is more venial, as he was being advised by, and acting under the direction of, an attorney of the court, but that does not excuse him altogether, and he will be fined $50, under the same conditions as provided for in Levy's case.

Harris will not be held guilty, though his conduct is not free from suspicion.

If it shall hereafter appear to the receiver or the trustee that the estate has suffered any loss by reason of the acts of the parties, proceedings of a proper nature will be taken.