### In re J. H. ALISON LUMBER CO.

(District Court S. D. Georgia, W. D. April 29, 1905.)

1. BANKRUPTCY—LIEN.

Where mortgaged property of an insolvent corporation was disposed of during a receivership prior to the institution of proceedings in bankruptcy, but neither the receiver nor the trustee in bankruptcy received any part of the proceeds, the mortgagee has no claim on the fund in the hands of the trustee on account of the mortgage.

2. SAME—PRIORITY OF CLAIMS—RECEIVER OF STATE COURT.

A receiver appointed by a state court for an insolvent corporation in proceedings instituted shortly prior to bankruptcy proceedings is not entitled to priority in the bankruptcy court on account of his services rendered prior to the bankruptcy proceedings, or of expenses or advances made to the estate which did not contribute to the fund in the hands of the trustee.

3. SAME—COSTS—REQUIRING PAYMENT FROM SECURED CREDITORS.

Secured creditors of a bankrupt who make use of the bankruptcy court and officers to realize on their security may be required to contribute their proportion to the costs of the proceedings and for the preservation of the property during their pendency, where there is not sufficient unincumbered estate, but they cannot be required by the court to pay any part of the expenses of a prior receivership in a state court.

In Bankruptcy. On petition of J. E. Mercer, receiver appointed by state court, for compensation, etc. Petitions of attorneys for fees and petition of Victoria McArthur, administratrix.

Minter Wimberly, for receiver.

George S. Jones, for petitioner McArthur.

Black & Jackson, D. B. Jay, L. Kennedy, and Haygood, Cheney & Stewart, pro se.

F. S. Harrell, for V. S. Wooley.

Hal Lawson, for Bowen Banking Co.

D. B. Jay and L. Kennedy, for trustee.

SPEER, District Judge. The enactment by Congress of a uniform system of bankruptcy has been repeatedly held to suspend the operation of state bankruptcy or insolvency laws. Sturges v. Crowninshield, 4 Wheat. 122, 4 L. Ed. 529; In re Smith (D. C.) 2 Am. Bankr. R. 9, 92 Fed. 135; In re Macon Sash & Door Company (D. C.) 7 Am. Bankr. R. 66, 112 Fed. 323, modified on appeal as Carling v. Seymour Lumber Co., 8 Am. Bankr. R. 29, 113 Fed.

483, 51 C. C. A. 1; Davis v. Bohle, 1 Am. Bankr. R. 412, 92 Fed. 325, 34 C. C. A. 372; Parmenter Mfg. Co. v. Hamilton, 1 Am. Bankr. R. 39, 51 N. E. 529, 70 Am. St. Rep. 258; In re Bruss-Ritter Co., 1 Am. Bankr. R. 58, (D. C.) 90 Fed. 651. The embarrassments which attend the parties in this cause are the direct outgrowths of a disregard of that settled doctrine. In November, 1902, the J. H. Alison Lumber Company, of Fitzgerald, became insolvent. It subsequently appeared that it was also bankrupt. A petition in behalf of creditors under the state insolvency law was filed in the state superior court of the Oconee circuit against that company. After consideration of the case made by the bill, that honorable court appointed Mr. J. E. Mercer as receiver of the assets of the insolvent company. By the decree of his appointment he was ordered to continue the business of the company as a going concern. This he did until March 30, 1903, when bankruptcy proceedings were instituted. Mr. Mercer, however, remained in possession of the assets of the bankrupt concern until a trustee was appointed and qualified, when he turned over to that officer the assets in his hands as receiver. He also submitted to the court appointing him a report of his services as receiver. In this he also gave an account of his receipts and disbursements. This report was approved by the judge of the superior court, who recommended to this court that Mr. Mercer's compensation as receiver of the state court be fixed at the sum of $1,000. Thereafter the receiver applied to this court for the approval of his accounts and for compensation for his services. This application was referred to a special master, with instructions to report as to the accuracy and propriety of the accounts, and approximately the sum which should be allowed as compensation for the services performed. Victoria McArthur, administratrix, also filed a petition in this court, asking that the receiver be required to pay to her as a part of his expenses of operation the value of certain timber used by him. Upon the proceeds of this timber she claimed a lien. Her petition was referred to the master. The usual applications for fees of the attorneys in bankruptcy were also referred. After taking and hearing the evidence fully, the special master filed his report. From this it appears that the accounts of Mr. Mercer as receiver of the state court were correct, and that he presented vouchers for all of his expenditures made in the operation of the business of the lumber company. It appeared that from his own means Mercer had advanced $3,451.37 more than had been received by him from the operation of his trust, and the master therefore found that the insolvent company was indebted to him in that sum. The master also found that $750 would be reasonable compensation for the services of Mr. Mercer as receiver in the state court and as custodian of the assets during the interval between the date of filing of the petition in bankruptcy and the qualification of the trustee. The master having heard evidence as to the character and value of their services also reported the amounts which should be allowed the attorneys as fees. The claim of Mrs. McArthur against the bankrupt estate was disallowed. On the coming in of the master's re-

port the court was advised that most of the machinery and property of the bankrupt had been withdrawn from the possession of the trustee. This had been done under orders granted by the referee in favor of creditors holding contracts for retention of title. It further appeared that much other property had been sold by the trustee, and the proceeds held to satisfy the lien of certain mortgages on practically all the assets. In addition to this, it appeared that a considerable amount of property was burned immediately after the trustee took charge. This was mainly lumber, drykilns, and the like, on which it was at the time impossible to obtain insurance. The loss it seems, however, fell principally upon individual creditors who had retained title, or who had mortgages on the property destroyed. In view of these facts it was discovered that there was not a sufficient fund in the hands of the trustee arising from the proceeds of unincumbered property to pay the costs, expenses of administration, attorney's fees, the compensation of the receiver in the state court, and the sum of $3,451.37 advanced by him from his personal means in conducting the losing operation of keeping that receivership a going concern as ordered by the state court. Certain pressing and obviously proper claims received an allowance on account by order of the court. A reference was then made to the referee having jurisdiction to report:

"First. As to what priority, if any, shall be allowed to the various claimants herein named, including Mrs. Victoria McArthur, should her claim be finally allowed by the court. Second. What proportionate part of the expenses and costs of administration should be taxed against these or other creditors or claimants, including those who have heretofore been paid in full or on account of the fund in court or allowed to withdraw property from the hands of the trustee."

The referee, having heard the parties, has made his report, exceptions thereto have been filed, and the matter is now for final decision.

It will be recalled that the special master disallowed the claim of Mrs. McArthur, administratrix. In this finding the referee concurred. This claim is based upon the facts following: Mrs. McArthur held title to certain timber. The Alison Lumber Company had notice of her claim. She had sold the land and timber to Swift and Grantham for $350, and had given them a bond for title. Swift and Grantham executed and delivered to Mrs. McArthur their promissory note for the purchase price, secured by a mortgage on all the logs and lumber cut from said land, and gave to Mrs. McArthur an order on the Alison Lumber Company to pay her $1 per thousand feet of lumber manufactured from logs coming from said land, to be credited on said note. The logs from the timber of Mrs. McArthur were furnished to the Alison Lumber Company by Swift and Grantham under this arrangement. This was the status at the time the receiver appointed by the state court took charge of the lumber company's mill. The facts were brought to the attention of the state court, and the receiver was by that court directed to segregate the lumber cut from Mrs.

McArthur's timber, and hold it subject to the order of the court to be made upon her petition for payment. Certain lumber was pointed out to the receiver as having been produced from the logs and timber in question. It also appeared that at the time Mercer was appointed receiver of the lumber company its mill was being operated by one Frank Crapp, who had agreed to pay the lumber company $1,000 a month as rental. The receiver continued the arrangement with Crapp for one month. Crapp cut up and disposed of Mrs. McArthur's lumber, but omitted to pay the receiver anything therefor. This was done while the property was entirely in the control of the state court, and three months before bankruptcy proceedings were instituted. Since none of the proceeds of the operation by Crapp went into the hands of the receiver, and nothing from this source was turned over by him to the trustee, it follows that the proceeds of Mrs. McArthur's lumber form no part whatever of the bankruptcy assets. As stated the lumber was sawed up by Crapp, who had agreed to pay the receiver $1,000 rent for the mill, but who never paid a dollar. This was done before bankruptcy. Whatever may be the equities to which Mrs. McArthur is entitled against Crapp, or against Mercer as receiver of the state court, or against Swift and Grantham, her claim obviously has no relation to the bankruptcy fund in the hands of the trustee, or to any fund which may accrue in its behalf.

Another question arises upon a petition of Mercer, receiver, presented to the referee after the reference above mentioned to that officer was made. In this Mercer recited the fact of his appointment as receiver of the state court; that he operated the sawmill of the bankrupt company; that, there being no fund in hand, he bought timber with his own money and that of his niece, for whom he was guardian, to the extent of $1,850, with which to operate the mill; that from this timber there was cut and turned over to the trustee logs that sold for $250; that from the same timber he himself manufactured lumber of the value of $5,801.85 at a cost of $3,782, which left a profit of $2,018.85. He alleged also that a part of this was used in the preservation of the estate, and also that the trustee sold timber turned over to him cut from said timber of the value of $800, and that the remainder of the timber was sold by the trustee for $1,385.25. He further alleged that he spent large sums of money in addition to the above for the protection of the estate; that the timber leases were his individual property, and that his title never passed to the bankrupt, He prayed that the money in the hands of the trustee arising from the sale of the lumber, timber, and logs be declared to be his property to the amount of $1,850, and that he be declared to have a lien upon the other funds in the hands of the trustee arising from the sale of timber and lumber. This he claims under the lien laws of Georgia. Upon this petition the finding of the referee is as follows:

"The trustee has in his hands $1,385.25 from the sale of the timber left standing and $252 from the sale of logs from this timber, and as much as 90 per cent. of certain lumber turned over by Mercer to the trustee, which the trustee sold for the sum of ———— dollars. There was also sold by the trus-

tee some rice meal for $61.25, which had been turned over by the receiver to him; and that the bankrupt estate is better off by the sum of these four amounts, to wit, ——— dollars, from the purchase and operations of the receiver so far as this timber is concerned, considered apart from his other transactions."

It is not a little embarrassing to the court that the referee on these important matters has thought proper to make his findings in blank. We are enabled, however, to gather from all of the figures and from the testimony of Mr. Mercer that the lumber turned over by him to the trustee was of the value of $800. Ninety per cent. of this sum—adopting the figure of the referee—is $720. The total of the four amounts found in Mr. Mercer's favor by the referee, had he appropriately written his figures in the blanks, will be $2,418.50. The referee further finds that for the remainder of Mr. Mercer's advances, expenses, and compensation as receiver he is not entitled to any lien or priority, but has only an unsecured claim against the estate, standing upon the same footing as any other unsecured creditor. While this is a hardship on Mercer, we are constrained to approve this finding. It is apparent from this record that no creditors other than those having liens or priorities can beneficially participate in the distribution of the assets. Creditors having claims to the extent of $13,000 have been allowed by the referee to withdraw from the estate machinery, timber, and other property furnished by them on contracts reserving title in the vendor. This was done in the following manner: Such creditors filed before the referee petitions setting up conditional sales, the amount due them, and praying that the trustee be authorized to "sell" to them such property in settlement of their claims. Attached to said petitions is a petition of the trustee representing that it is to the best interest of the estate to accept such offer, and praying that he be authorized to make the sale. This is followed by an order of the referee directing the sale to the claimants for the amount due them. It is also significant that six of the seven creditors who in this manner apparently received full settlement of their claims were represented by the same attorneys who also appear of record as the attorneys for the trustee and for the petitioning creditors. No attention seems to have been accorded the rule of court on this subject adopted May 30, 1901, as follows:

"It is ordered that in no case shall trustees, receivers or custodians appointed in bankruptcy cases employ attorneys to represent them without first obtaining an order of the court authorizing such employment. Ordered further that in no case shall such trustees, receivers or custodians employ or continue as their attorneys a member or members of the bar employed in the same cause by the bankrupt or a creditor unless previously so authorized by order of the District Judge."

These so-called "sales" or orders allowing vendors to retake property furnished by them were, it also appears, made ex parte, and without complying with section 58–4, which requires "creditors shall have at least ten days' notice by mail of all proposed sales of property." Bankr. Act July 1, 1898, c. 541, 30 Stat. 561 [U. S. Comp. St. 1901, p. 3444]. Another creditor—V. S. Wooley—held a valid specific mortgage on certain timber and other property of

the bankrupt. This was given to secure a loan of $3,750 with interest at 8 per cent. from June 14, 1902. This property was sold by the trustee for $5,060. It follows that the lien of the creditor attached to this fund, and must, unless otherwise ordered, in its entirety be paid therefrom. Since this property brought more than the principal and interest of the mortgage, it is presumable that a sufficiency to discharge the debt of Wooley is in the designated depository as required by law. There is no doubt at all as to the validity or priority of Wooley's claim and mortgage on the property conveyed to secure it.

It is quite impossible to compel secured creditors to pay any part of the compensation of the receiver earned in the state court, or any portion of his advances there which did not evidentially appear to contribute to the fund in the hands of the trustee in bankruptcy. The expenses and costs of the bankruptcy court stand upon a superior footing, and, if there is not sufficient money arising from the sale of unpledged property to pay them, it seems that the secured creditors should contribute ratably to that purpose. They have appeared in the bankruptcy court, selected it as their forum, availed themselves of the services of its officers, and utilized its process to collect their claims. We have no doubt of their duty to contribute to pay all such costs and expenses. As stated in Isaac on Conditional Sales in Bankruptcy, § 117:

"Where actual and necessary expenses have been incurred to the estate in the preservation of property sought to be reclaimed, the court may tax the claimant the whole or any part of such expense. Bankr. Act, § 64b (1)."

And section 118:

"It has been held that, where the property is sold by consent of the claimant, the referee and trustee are entitled to commissions on the purchase price in full, even when the claimant is the purchaser. In re Sanford Furniture Co., 11 Am. Bankr. R. 414."

Among the claims of this character is that of J. E. Mercer in preserving the assets of the bankrupt after the petition had been filed and before a trustee had been elected. For these services the court will allow him $300, and will approve the finding of the special master fixing $750 as compensation for his entire services. This will leave $450 for his services in the state court. This he may possibly recover from the plaintiffs in the original suit in the state court who secured his appointment on the inoperative insolvency proceeding. This may also be true of the balance of his advances and expenses as such receiver, for which priority here has been denied him. The disastrous result of the receivership in the state court, and the calamity which fell upon the property from a fire after the trustee was appointed, all of which most unfortunately reduced the assets of the bankrupt, will not only defeat the claim of unsecured creditors, but will largely reduce the compensation of attorneys. These fees will be fixed as follows: Black & Jackson, $250; Kennedy & Jay, $250; Haygood, Cheney & Stewart, $100. These sums have already been paid on account, and by this finding the account is closed. The fee of the attorney for the trustee has

not been fixed. This, if allowed, will, of course, constitute a part of the expenses in bankruptcy. This attorney is yet attempting to collect funds of the estate, and his compensation may, perhaps, be adjusted with large regard to his success. The receiver and custodian, J. E. Mercer, has already been paid $1,000 on account. This, of course, must be credited on the amount of $2,418.50 for timber actually furnished by him to his trust and allowed him by the referee as above recited. V. S. Wooley has also been paid $1,000 on account of his claim. It follows that the balance of his claim of $3,750, with interest from June 14, 1902, at 8 per cent. must be paid in full. This, however, like payments made or satisfied by the delivery of property for or bought by other secured creditors, is subject to the ratable deduction to be apportioned on the value each received, to pay the costs and expenses of protecting, collecting, and administering the property pledged to secure their claims, unless it should turn out that there is in the general fund a sufficient sum for that purpose. This is in accordance with the finding of the referee as follows:

"Each of the parties who have withdrawn property should contribute to this fund, whatever it may be, according to the amount collected on their claims, as shown by the settlements made by them with the trustee. These parties are the Bowen Banking Co., Berlin Machine Works, Mrs. Ella Mae McCarty, Soule Steam Feed Works, Continental Gin Co., Schofield Sons Company, and V. S. Wooley."

The court has reason to believe from information received from the trustee that the latter will probably receive a considerable sum from the settlement of certain litigation now pending. It may be therefore that it will not be necessary to require the creditors above mentioned to contribute to the expenses of the bankruptcy court.