## In re HELEKER BROS. MERCANTILE CO.

### (District Court, D. Kansas, First Division. March 28, 1914.)

### No. 1701.

1. BANKRUPTCY (§ 81*)—INVOLUNTARY PROCEEDINGS—SUFFICIENCY OF PETITION.

A petition in involuntary bankruptcy against a corporation *held* to sufficiently charge that a transfer of property by the corporation was made when it was insolvent, and with intent to hinder, delay, and defraud creditors, to constitute such transfer, if the allegations were proved, an act of bankruptcy, under Bankr. Act 1898, c. 541, § 3a(1), 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 59, 113–118, 125; Dec. Dig. § 81.*]

2. BANKRUPTCY (§ 101*)—EXCLUSIVE CHARACTER OF ACT—RIGHT OF CREDITORS TO ENFORCE.

By reason of the exclusive nature of the Bankruptcy Act, the manner of its enforcement, and the forum in which it is enforced, creditors obtain rights in the assets and property of their insolvent debtors, of which they may not be deprived by the voluntary action of the debtors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 163; Dec. Dig. § 101.*]

3. BANKRUPTCY (§ 60*)—ACTS OF BANKRUPTCY—"GENERAL ASSIGNMENT."

Bankr. Act 1898, c. 541, § 3a(4), 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422), which makes it an act of bankruptcy if a debtor shall have "made a 'general assignment' for the benefit of his creditors," does not refer to such acts only as constitute such an assignment under laws of the state, nor concern itself with the form of the written instrument employed, but contemplates any act of a debtor, regardless of the manner or form of its accomplishment, by which he parts with the title and possession of all of his property for the benefit of his creditors, to be disposed of by the trustee or assignee selected by him independent of the Bankruptcy Act.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 80; Dec. Dig. § 60.*

For other definitions, see Words and Phrases, First and Second Series, General Assignment.]

4. BANKRUPTCY (§ 60*)—ACTS OF BANKRUPTCY—GENERAL ASSIGNMENT.

An instrument executed by a corporation, which, while denominated and in form a mortgage, with a defeasance clause, in fact conveyed all of its property to trustees, with the right of immediate possession, to be by them converted into money and the proceeds distributed among all of its creditors, and under which they took such possession, *held* in effect a general assignment, and to constitute an act of bankruptcy under Bankr. Act 1898, c. 541, § 3 a (4), 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 80; Dec. Dig. § 60.*]

In Bankruptcy. In the matter of the Heleker Bros. Mercantile Company, bankrupt. On motion to dismiss amended petition. Denied.

McClintock & Quant, of Topeka, Kan., for petitioning creditors.

Gregg & Gregg, of Frankfort, Kan., and Ellis & Yale, of Kansas City, Mo., for respondent.

POLLOCK, District Judge. On September 19, 1913, the bankrupt made, executed, and delivered the following instrument in writing,

thereby conveying in trust, for the purposes therein stated, all of its property and assets, to wit:

### Trust Mortgage.

Know all men by these presents, that this mortgage, made and entered into this 19th day of September, 1913, by and between the Heleker Bros. Mercantile Company of Frankfort County, of Marshall, state of Kansas, party of the first part, and E. D. Plummer, Wm. J. Gregg, and Frank W. Yale (hereinafter referred to as trustees), parties of the second part, and the persons, firms, and corporations (hereinafter referred to as creditors), named in Schedule A hereto attached and made part hereof, parties of the third part, witnesseth: That the party of the first part, for and in consideration of the indebtedness due said creditors as set forth in said Schedule A opposite their respective names, the trust hereinafter mentioned and created, and of the sum of one dollar to it paid by the said parties of the second part, the receipt whereof is hereby acknowledged, does by these presents sell, assign, transfer, and mortgage to the said part....of the second part,......successors and assigns, the following described property situated in the county of Marshall, state of Kansas to wit:

*1. All its stock of goods, wares, and merchandise, consisting chiefly of clothing, furnishing goods, hats, caps, shoes, dry goods, hosiery, ready-made garments, etc., contained in the two storerooms joining each other at right angles located on lots 9 and 10, block 86, Frankfort, Kansas, wherein it has been conducting the business of retail dealer in merchandise in the town of Frankfort, Kansas.*

*2. All furniture, fixtures, safe, showcases, and appliances of trade used in connection with said business and contained in said building.*

*3. All books of account, book accounts, notes, and other evidences of debt due or to become due to said corporation.*

*4. All policies of insurance upon or appertaining to said property,* and possession of said property is now delivered unto said parties of the second part.

To have and to hold the same to said parties of the second part, and to *their* successors and assigns forever; in trust, however, upon the conditions and for the purposes following, to wit:

Whereas, the said party of the first part is indebted to the said creditors in the amounts set opposite their respective names in said Schedule A hereto attached:

Now, therefore, if said party of the first part shall pay or cause to be paid to the said creditors all of the indebtedness due as aforesaid to them, and to each of them, with the accrued interest thereon, before the 19th day of October, 1913, then this instrument shall be void; otherwise, it shall remain in full force and effect.

In the meantime, the said trustees shall take and is hereby given immediate and exclusive possession of the property hereinbefore conveyed, and shall make or cause to be made a correct inventory of the same; and if default be made in payment of said indebtedness in the time aforesaid, the trustees shall sell the merchandise, fixtures, and other property, at public or private sale, with or without notice, in bulk or at retail, as to him may seem best for all concerned: Provided, however, that upon demand in writing of a majority in number of said creditors representing a majority in amount of said indebtedness, it shall be the duty of said trustees to sell all or any portion of the property hereinbefore conveyed at public auction to the highest bidder for cash, after having mailed to all creditors named in said Schedule A, to their respective addresses as therein stated, written notices of the time and place of said sale at least ten days prior thereto, and advertising said sale in such other manner as said trustee may elect; and the affidavit of said trustees of the mailing of said notices to said creditors shall be conclusive evidence thereof. And provided further, that no sale of said property in bulk at public auction shall be made by said trustees, except upon notice given as above prescribed.

*In the event the trustees do not agree upon any question arising in the administration hereof a majority shall govern: Provided, that no private sale*

*shall be made, except on joint consent of all trustees; and provided, that any public sale shall be held at Frankfort, Kansas.*

And said trustees shall proceed to collect the notes and accounts, or to sell or dispose of the same in such manner as to him shall seem best for the interests of all concerned; and in case said trustees shall find that any of said notes and accounts are disputed or are against persons of doubtful solvency, he is hereby authorized to settle, compromise, or extend the same on such terms as he may deem best.

Out of the proceeds of such sales and collections the said trustees shall pay: First, the expenses of administering this trust, including taxes, if any, insurance, rents, fuel, lights, advertising, clerk hire, attorney fees, etc. *Second, wages that would be entitled to priority under the laws of the United States relating to bankruptcy and reasonable compensation to the trustees for their service.* They shall next pay to said creditors the amounts so due them, and each of them as aforesaid; but in case such proceeds shall not be sufficient to pay said indebtedness in full, then they shall pay said creditors pro rata in the proportion that the amount due to each of them bears to the whole of said indebtedness.

*Nothing herein contained shall be construed as releasing C. H. Heleker from any liability on any unpaid indebtedness due from Heleker Bros.* After said indebtedness to said creditors and each of them is paid in full, then said trustees shall return to said party of the first part any and all surplus money or property remaining in *their* hands.

Said Schedule A is intended to be a full and correct list of all the...... creditors of said party of the first part, with the correct address and the amount due to each; but if through error or oversight the name of any...... creditor of said party of the first part has been omitted from said Schedule A, said trustees upon ascertaining the facts may, and it shall be (their) his duty to add the name of such creditor, his address and the amount due thereto; and in case said trustees shall find any error has been made in stating the address of any creditor named in said Schedule A, or that the amount specified as due to any creditor is erroneous in amount, then it shall be the duty of said trustees, upon ascertaining the facts, to so correct such Schedule A as to make it state the truth in that regard; and for the purpose of ascertaining the facts regarding the amount due any of said creditors, said trustees are authorized to require of them itemized and verified statements of their accounts, exhibition to him of original notes or contracts where such indebtedness is evidenced by such notes or contracts, and to demand from them such additional legal and proper evidence as he shall deem necessary; and said Schedule A, when so amended and corrected by said trustees, shall stand and remain as the basis for payment to creditors hereinbefore provided for and for all other purposes of this trust.

*The trustees shall not be liable for any omissions from or errors in said Schedule A unless their attention is called to the same in writing before the distribution of the funds obtained hereunder.*

In witness whereof, the said party of the first part has set its hand by its duly authorized officers and seal this 19th day of September, 1913.

[Seal]   The Heleker Bros. Merc. Co.,

By A. A. Heleker, Prest.

Attest: Howard F. Heleker, Secretary.

Executed and delivered in the presence of

.....................

.....................

Witnesses.

State of Kansas, County of Marshall—ss.:

On this 19th day of Sept., 1913, before me, J. D. Gregg, a notary public, personally appeared A. A. Heleker and Howard F. Heleker, president and secretary, respectively, of the Heleker Bros. Merc. Co., to me known to be the persons described in and who executed the foregoing instrument, and acknowledged that they executed the same as their free act and deed.

J. D. Gregg, Notary Public.

My commission expires Jany. 21st, 1917.

Schedule A.

| | | |
|---|---|---|
| Richardson Dry Goods | St. Joseph, Mo. | $3,209.60 |
| Bush Hat Co. | Chicago, Ill. | 969.24 |
| Buttrick Pattern Pub. Co. | New York | 20.00 |
| Marks Tailoring Co. | Chicago | 15.50 |
| Perfection Mfg. Co. | Cedar Rapids, Ia. | 96.00 |
| Tootle Campbell D. G. Co. | St. Joseph, Mo. | 4.89 |
| S. Galewski | New York | 11.50 |
| Omaha Rubber Co. | Omaha, Neb. | 126.73 |
| Topeka Woolen Mfg. Co. | Topeka | 676.50 |
| Otto Rundberg Co. | Chicago | 7.39 |
| Geo. P. Ide & Co. | Troy, N. Y. | 76.91 |
| F. J. Holzer Emb. Works | St. Louis, Mo. | 49.85 |
| W. S. Peck & Co. | Syracuse, N. Y. | 2,404.12 |
| Royal Worcester Corset Co. | Chicago, Ill. | 62.32 |
| McCord-Donovan Shoe Co. | St. Joseph, Mo. | 880.75 |
| Jas. F. Coyle & Co. | St. Louis, Mo. | 34.88 |
| Central Topeka Paper Co. | Topeka | 16.04 |
| Wolf Bros. & Co. | Omaha, Neb. | 16.00 |
| North Western Knitting Co. | Minneapolis | 130.59 |
| S. Deiches & Co. | Chicago | 25.90 |
| Beloit Glove & Mitten Co. | Beloit, Wisc. | 43.57 |
| Jacob David Sons Co. | New York | 88.00 |
| Morris, Mann & Reilly | Chicago | 25.00 |
| Combs Printing Co. | St. Joseph, Mo. | 17.50 |
| Bradley Metcalf Co. | Milwaukee | 14.50 |
| J. Rothschild Hat Co. | Kansas City, Mo. | 19.50 |
| Fred S. Todd Shoe Co. | Rochester, N. Y. | 219.65 |
| Outcault Advertising Co. | Chicago, Ill. | 42.50 |
| F. Stegel & Bros. | Chicago, Ill. | 55.07 |
| A. Rolowski | New York | 34.75 |
| Citizens Bank | Frankfort, Ks. | 2,800.00 |
| T. F. Rhoades | ” ” | 500.00 |
| Frank Hartman | ” ” | 180.00 |
| Frank Bliss | ” ” | |
| John B. Auld | ” ” | |
| Christine A. Heleker | ” ” | 100.00 |
| Georgia A. Heleker | ” ” | 25.00 |

Indorsed as follows:

Trust Mortgage, Long Form. From Heleker Bros. Mercantile Co., Frankfort, Kansas, to Gregg, Plummer & Yale, Trustees for Creditors.

Filed for record this ——— day of ———, A. D. 190—, at ——— o'clock, ——— minutes, ——— M.

Recorded in Book ——— at page ———.

——————, Recorder.

By ——————, Deputy.

Recorder's fee, $———.

The trustees named therein accepted the trust and took possession of all and singular the property and assets of the bankrupt and proceeded to the sale and disposition of the same in pursuance of the authority conferred by the trust agreement. Certain of the creditors named in Schedule A attached to the agreement for whose benefit the same purported to have been made, refused to accept the provisions therein made for their benefit, or to consent to the plan adopted by the bankrupt for the settlement of its estate and its distribution among its creditors. On the contrary, after the making of said instrument and after possession of the property thereunder passed to the trustees there-

in named, and as they were proceeding with the sale and distribution of the property, on October 13, 1913, this proceeding in bankruptcy against the corporation was instituted. The only act of bankruptcy charged in the petition relates to the making by the corporation, when insolvent, the foregoing conveyance of all its property and assets to trustees of its own selection, and the turning over possession and control of all its property and assets to be by them sold and disposed of, and the proceeds derived therefrom distributed among its creditors, in accordance with the provisions of the agreement.

To an amended petition charging the making of this agreement, the surrender by the bankrupt corporation of possession of all its assets and property to the trustee named therein for administration and distribution among creditors, to constitute an act of bankruptcy under clauses 1, 3, and 4, subdivision "a," section 3, of the Bankruptcy Act, certain creditors participating in the plan have answered, demanding a trial by jury. The bankrupt corporation has moved to dismiss the proceeding for want of equity, or want of the averment of sufficient facts in the amended petition of creditors to uphold an adjudication in bankruptcy. This motion stands submitted for decision on voluminous briefs of the respective parties.

The position taken by the alleged bankrupt corporation in support of its motion to dismiss, as I understand from the argument made, is based on two propositions: (1) That the instrument in controversy is in legal effect a mortgage, and not an instrument of general assignment for the benefit of creditors; therefore its making does not constitute an act of bankruptcy, within the purview of clause 4 of subdivision "a," section 3, of the Bankruptcy Act. (2) That the phrase, "with intent to hinder, delay or defraud creditors," as employed in clause 1, subdivision "a," section 3, of the act, is used in the same sense and with like effect by the lawmaking power as is the same expression in subdivision "e" of section 67 of the act relating to fraudulent conveyances, and as employed in the last-mentioned connection the term implies actual fraud, involving moral turpitude, or what is called fraud in fact, and from the very nature of the written instrument involved herein, it being, as contended, a mortgage by the bankrupt, it had the right to make and deliver it, and the possession of its property, as was done in this case, for that no actual fraud or evil intent in making such disposition of its property is or can be shown.

[1] In considering questions thus presented, it is to be borne in mind the office of the motion here interposed is like unto that of a demurrer, which confesses all the matters well pleaded in the petition. Turning to the amended petition, to which the motion is directed, in paragraph 5 it is found charged, as follows:

"(5) First act of bankruptcy: On September 19, 1913, and while insolvent, the company committed an act of bankruptcy, in that it transferred all of its assets with intent to hinder, delay, and defraud its creditors. The nature of said transfer is as follows."

While in the following paragraph the instrument in dispute is by reference adopted by the pleader and different intents in its making are charged, yet, as the specific fraudulent intent in the mind of the maker of the instrument is charged to have been present at the time it was

made in such manner as to constitute an act of bankruptcy, it is to my mind sufficient to render the petition attacked invulnerable to the motion interposed, and this, although the instrument may be held to be in legal effect a mortgage, and not an instrument of assignment. And this, for the reason the charges of fraudulent intent alleged in the amended petition of creditors against which the motion is levied are sufficient in my judgment to warrant the admission of actual fraudulent intent in the minds of the parties thereto, such as would show, if any such facts are in existence and may be shown, that notwithstanding the form and legal effect of the paper executed, all the parties thereto, while pretending to act in pursuance thereof, yet in truth and in fact intended to appropriate the entire assets of the estate to their own use, and not to the use of any of the creditors, or to the use of a portion only of the creditors. On this ground alone I am of the opinion the motion interposed must be denied, and the bankrupt ruled to answer.

However, it is quite evident the parties to this litigation much desire an expression of opinion as to the legal effect of the trust agreement made by the bankrupt, and whether the making of such an instrument of conveyance of the entire estate and property of an insolvent debtor constitutes an act of bankruptcy, within the meaning and intent of clause 4, subdivision "a," of section 3 of the Bankruptcy Act. In this regard it may be observed, manifestly, the instrument in question, judging from its structure, was prepared with much care and thought, and with the evident intent in the mind of its framer its legal effect would be construed as that of a mortgage, and not an instrument of assignment for the benefit of creditors, and that its making by an insolvent debtor on the verge of bankruptcy would not constitute an act of bankruptcy; hence courts of bankruptcy would have no jurisdiction over an estate thereby conveyed, and the intending bankrupt could thus direct the course and manner of the administration of his estate, regardless of the Bankruptcy Act or the wishes or acquiescence of his creditors.

[2, 3] However, in my opinion, this plan of conducting the administration of the estate of an insolvent debtor overlooks matters of much moment to creditors not assenting thereto. The Bankruptcy Act was designed to be, and is, in its operation, exclusive not only of the state insolvency, assignment, and bankruptcy laws, while it is continued in force by the Congress, but the method of its application and enforcement through courts of bankruptcy is also exclusive of all other tribunals; hence, in pursuance of the exclusive nature of the act and the manner of its enforcement, and the forum in which it is enforced, creditors obtain rights in the assets and property of their insolvent debtors of which they may not by the voluntary or concerted action of their debtors be deprived. Not only so, but if their debtor, although he be not insolvent, assigns or conveys to a trustee all his property for the benefit of his creditors, retaining nothing in his hands with which to meet the demands of his creditors upon him, creditors have the right to object to such disposition of his property, and to resort to the bankruptcy court in the assertion of their rights, and this entirely regardless of the ordinary legal nature or effect of the formal instrument by which

the debtor seeks to accomplish his purpose. That is to say, the term "general assignment for the benefit of creditors" as employed in clause 4, subdivision "a," section 3, of the Bankruptcy Act, does not concern itself merely with such acts of a debtor as would constitute an assignment for the benefit of creditors under the laws of the state in which it is made or, merely with the form of the written instrument employed to effectuate such purpose; on the contrary, the act does concern itself with, and does contemplate, all acts of a debtor, regardless of the manner or form of their accomplishment, by which he parts with the title and possession of all his property of every kind and nature for the benefit of his creditors, to be disposed of as his trustee or assignee by him selected and named may employ, independent of the Bankruptcy Act.

Mr. Collier, in his work on Bankruptcy (9th Ed., p. 98), in defining what constitutes a general assignment, says:

"A general assignment, to constitute an act of bankruptcy under this subsection, must be for the benefit of creditors. A direct transfer to creditors after the intervention of a trustee duly appointed is not such an assignment. A formal deed of assignment is not required. A debtor may have prepared a deed of assignment with intent to execute it, but, so long as he has left it unexecuted or in escrow, the general assignment contemplated has not been made. But it is not essential that all the creditors accept the terms imposed by the instrument, if it appears on its face to have been a disposition of all the property of the assignor for the benefit of his creditors. As already indicated, the insolvency of debtor is not an essential fact. *Whatever may be the form of the conveyance in trust of the debtor's property, if it cover all his property and be for the payment of his debts,* it operates in law as a general assignment for the benefit of creditors."

In Missouri Elec. Co. v. Hamilton Brown Co., 21 Am. Bankr. Rep. 270, 165 Fed. 283, 91 C. C. A. 251, Sanborn, C. J., delivering the opinion for the Court of Appeals for this Circuit, defines a general assignment as contemplated by the Bankruptcy Act, as follows:

"A general assignment for the benefit of creditors is ordinarily a conveyance by a debtor without consideration from the grantee of substantially all his property to a party, in trust to collect the amounts owing to him, to sell and convey the property, to distribute the proceeds of all the property among his creditors, and to return the surplus, if any, to the debtor."

[4] A reading of the instrument involved in this case will show it to be in every essential particular within the definition of a general assignment as above set forth.

In re Thomlinson Co., 154 Fed. 834, 83 C. C. A. 550, involved an instrument of conveyance in every essential particular identical in legal aspect with that involved in this case, as will be seen from a reading of the same set forth in the statement of facts in that case. There, as in this case, the contention was made the instrument did not create a general assignment but was in legal effect a mortgage. Adams, Circuit Judge, in delivering the opinion for the court, says:

"In our opinion the instrument in question was a general assignment for the benefit of creditors within the true meaning of the Bankruptcy Act, and was an act of bankruptcy warranting the adjudication. The 'general assignment' there contemplated is to be taken in its generic sense, and embraces any conveyance at common law or by statute by which the parties intend to make an absolute and unconditional appropriation of the property conveyed to raise funds to pay the debts of the vendor, share and share alike. Ap-

polos v. Brady, 1 C. C. A. 299, 49 Fed. 401; Bartlett v. Teah (C. C.) 1 Fed. 768; In re Gutwillig (D. C.) 90 Fed. 475; Id., 34 C. C. A. 377, 92 Fed. 337; In re Sievers (D. C.) 91 Fed. 366; Davis v. Bohle, 34 C. C. A. 372, 92 Fed. 325. Such a conveyance inevitably thwarts operation of the Bankruptcy Act. The instrument now under consideration conforms fully to the above definition. It makes an absolute and unconditional conveyance of the debtor's property to a trustee of its own choosing, to be sold to raise a fund for the payment of all its creditors, share and share alike. It is therefore obnoxious to the provisions of the Bankruptcy Act, which confers the right of administering an insolvent debtor's estate upon a trustee to be chosen by and in the interest of the creditors, and constitutes an act of bankruptcy. Rumsey & Sikemier Co. v. Novelty & Machine Mfg. Co. (D. C.) 99 Fed. 699. The general statement made in the last-cited case by the writer of this opinion when District Judge, that the conveyance there under consideration contains such a reservation of an equity or such a condition of defeasance as made it a mortgage, instead of a general assignment, upon which counsel for petitioners now place some reliance, was, as a general proposition, independent of the facts of that case, ill-advised, and cannot be followed. The instrument in question does not contain any of the elements of a mortgage, as insisted upon by bankrupts' counsel. The idea that it was intended as a security for the ultimate payment of the debts of the vendor, or that a reservation of a right to redeem whenever the vendor should pay its debts was intended, is not remotely suggested by any of the terms of the instrument; in other words, there is no right of redemption reserved. The provision at the end of the instrument, requiring surplus, if any, to be paid to the vendor, cannot be regarded as such reservation. It is nothing more than an expression of what the law implies. If, after all the property had been disposed of, and all the creditors had been fully paid, and all the expenses satisfied, any surplus remained, it belonged as a matter of law to the debtor, and no formal statement to that effect can change the legal and obvious import of the instrument from a general assignment for the payment of debts to a provision for their security in the nature of a chattel mortgage." West Co. v. Lea, 174 U. S. 590, 19 Sup. Ct. 836, 43 L. Ed. 1098; In re Gutwillig (D. C.) 90 Fed. 475; In re Sievers (D. C.) 91 Fed. 366; In re Hersey (D. C.) 171 Fed. 998; Abbott v. Summers, 116 Fed. 687; Davis v. Bohle, 92 Fed. 325, 34 C. C. A. 372.

Therefore, regardless of the defeasance clause found in the instrument involved herein, relied upon by the bankrupt to give the instrument the legal effect of a mortgage, and not that of an instrument of assignment, the effect of the instrument made by the bankrupt and of the entire transaction thereunder was to pass the legal title to all the property of the bankrupt to trustees named by it, and under which they took actual possession of its property, with full power of disposition and distribution of the proceeds to the creditors of the bankrupt, the writing and the entire transaction thereunder constituted a general assignment for the benefit of creditors as contemplated by the Bankruptcy Act, and in consequence was an act of bankruptcy.

It follows the motion to dismiss for want of equity or sufficient statement in the amended petition must be denied. It is so ordered, with leave to the maker of the motion to answer the petition within 10 days, if so advised by its solicitors.