**In the Matter of Peter C. MACKIN, Alleged Bankrupt.**

**No. 737–59.**

United States District Court
D. Massachusetts.

Feb. 11, 1960.

**46**

John J. Grady, Boston, Mass., for petitioners.

Hale & Dorr, Boston, Mass., for debtor.

McCARTHY, District Judge.

In this matter an involuntary petition in bankruptcy was filed by three creditors who, through their attorney, asked that a receiver be appointed to conserve the assets of the alleged bankrupt, with enlarged powers including the power to continue the business operations of the alleged bankrupt.

The receiver, seeking an exercise of the summary jurisdiction of the court, petitioned for an order directing an alleged trust mortgagee to turn over to the receiver assets of the alleged bankrupt held by the alleged trust mortgagee by virtue of the alleged trust mortgage. After extended hearing it is the decision of the court that the petition must be allowed and the alleged trust mortgagee ordered to turn over to the receiver whatever assets are now held by him and to comply, in all respects, with the Order of the Court filed contemporaneously with this memorandum.

The answer filed by the alleged trust mortgagee and the subsequent motion to dismiss filed by him rest upon two principal grounds: that the trust mortgage is a true trust mortgage and that there can be no 'turn over' order in any event because of the fact that there has been no adjudication of bankruptcy. The alleged trust mortgagee, the respondent to the present petition, has supported his position by memorandum of law. This memorandum has been carefully considered but found lacking in persuasive qualities.

## 1. FINDINGS OF FACT

The alleged bankrupt, hereinafter Mackin, executed, on April 28, 1959, a real estate mortgage, a collateral note, a security agreement and a trust indenture, which documents are attached to the answer of the respondent herein.

On April 28, 1959, and for a number of years prior thereto, Mackin was an individual engaged in the home and industrial oil business, the trucking business, the sand and gravel business, the manufacturing of cement blocks, the construction business and the retail appliance business. In addition to motor vehicles, machinery and equipment used in said business, Mackin also owned three gasoline-station sites, all subject to substantial mortgages. Substantially all of his machinery, equipment and motor vehicles were subject to conditional sales, chattel mortgages and security interests of such amounts that he was unable to raise further monies in April of 1959 on a security basis. On April 28, 1959, his current unsecured trade indebtedness amounted to approximately $175,000, most of which were overdue and which he was unable to pay. He also owed approximately $90,000 to relatives. During April of 1959 the respondent Arthur T. Wasserman, Esq., representing the Standard Oil Company, made demand upon Mackin for payment of monies then owed to that company in the approximate amount of $60,000. Mackin paid $15,000 by check on account thereof, but stated that he was unable to pay the installments on the balance in the amount requested by said Wasserman. At or about that time the said Wasserman hired one Samuel Richard, an appraiser from Boston, who made a liquidation sale appraisal of all of the assets of Mackin. This was done by Richard on or about April 21, 1959. Thereafter, on or about April 28, 1959, Mackin was called to a meeting in the office of Wasserman, at which time there were also present officers and agents of the First National Bank of Boston, counsel for the First National Bank of Boston, an officer or

employee of the Esso Standard Oil Company and Wasserman. In the overall picture presented to the court through a study of the facts and circumstances it becomes difficult, if not impossible, to recognize the position of the First National Bank in view of the fact that it is inescapably clear that an official of the bank was secretary to the so-called creditors' committee, although the bank was a secured creditor herein with a mortgage senior to the instrument involved in these proceedings. Mackin appeared at this meeting without counsel and was for the first time presented with the documents described above. Mackin was asked to sign the said instruments and to obtain his wife's signature to the real estate mortgage. Mackin at first refused to do so and asked that he be allowed to have an attorney examine the documents and to counsel him on the matter. Wasserman stated before all those present that no further time could be granted and that if he did not sign the papers and obtain his wife's signature to the mortgage that he (Wasserman) would have a marshal on Mackin's premises the following day to attach all of his equipment and property. Thereupon Mackin read and signed the documents. At this meeting those present had full knowledge that 500 acres of real estate had been staked out by the Commonwealth of Massachusetts for the purpose of building a highway and that it was held in the name of Peter C. Mackin's wife and was and still is a very valuable asset. Knowing these facts, they forced Mackin to induce his wife to sign a mortgage of all her right, title, and interest in this land to the mortgage trustee, and at that time it was not an asset of the estate of the alleged bankrupt. Shortly thereafter an attorney associated with Wasserman went to Greenfield and secured the signature of the wife of Mackin to the real estate mortgage. I find that the Respondent Wasserman, the Esso Standard Oil Company, the First National Bank of Boston, and Mackin, the alleged bankrupt, knew that on April 28, 1959, there was no reasonable expecta-

tion that the said Mackin could pay in full the amount of the collateral note in the amount of $360,000 upon demand nor could he have paid the amount of his unsecured indebtedness. His cash balance in the Franklin County Trust Company for his businesses at that time amounted to approximately $44. I find that upon the execution of the aforesaid documents the alleged Bankrupt had no real equity of redemption since upon the liquidation of his assets the Creditors Committee, itself, estimated that there would be a deficit of about $32,000. See Receiver's Ex. 7. I further find that it was the intention of Wasserman and the members of the Creditors Committee after four months to carry out a speedy liquidation of all of the assets of the alleged bankrupt for the benefit of all creditors who assented to the Trust Indenture in the same fashion and manner as if an assignment for the benefit of creditors in its usual form had been executed.

On May 4, 1959, Wasserman and the Creditors Committee, without default upon the alleged "trust mortgage", at its first meeting designated one Singer as their agent to operate the business of Mackin and Mackin was put on a salary of $150 per week. All of the cash receipts and deposits in the name of Mackin were deposited, on May 26, 1959, and thereafter, to a new account in the name of Arthur T. Wasserman, Trustee. Another account in the names of Singer and Mackin, requiring both signatures for checks, was opened. Checks required in Singer's discretion to operate the businesses were issued on the last mentioned account and the monies necessary to cover said checks were supplied by Wasserman, after Wasserman's approval of the expenditures, through a check drawn upon the account of Wasserman, Trustee. The only source of funds for the Singer account was the Wasserman, Trustee, account and all of the receipts of the businesses of Mackin were deposited to the Wasserman, Trustee, account. Singer first took charge of the businesses by actual presence in Greenfield on May 6, 1959. No demand for payment of the

collateral note had been made up to that time and I find that no default in the terms of the so-called Trust Indenture had then occurred.

Singer was in Greenfield at the Mackin premises about three days a week and was in complete control of the financial aspects of the businesses. In addition to these activities, Singer contacted more creditors and persuaded them to continue to sell merchandise to Mackin on the representation that Wasserman, as Trustee, was in control of the funds of the Mackin businesses and that they would be paid by Wasserman. Some bills were thereafter sent in the name of Wasserman, Trustee, for purchases made during the period after April 28, 1959, and up to August 26, 1959, the date of filing of the Involuntary Petition in Bankruptcy.

After the appointment of Singer, Mackin was told by one of the creditors, in the presence of Wasserman, and other members of the Creditors Committee at a regular committee meeting that Mackin was no longer running the businesses, that the creditors were operating his businesses and that nothing should be done without their approval.

In May of 1959 Wasserman informed Mackin that his retail appliance business was to be liquidated. Mackin objected to this but over his protests, in June of 1959, Wasserman hired an auctioneer who advertised a liquidation sale, put his red flag outside the store, and sold all of the merchandise in the appliance business at public auction. The merchandise was sold for approximately $10,000 net and it had a retail value of approximately $25,-000. The store on the main street in Greenfield in which the appliance business had been carried on had also played an important part in his overall business operations. Nevertheless after the sale the store was vacated.

On April 28, 1959, Mackin, as part of his construction business, was engaged in the performance of construction contracts in the amount of over $300,000, the greater part of which were due to be completed by the end of August, 1959.

On or about May 20, 1959, Mackin informed Wasserman and the Creditors Committee that he wished to bid on another construction job and asked for a certified check in the amount of $4,000 to present as a deposit on his bid. Mackin told Wasserman that this job would take about three months to complete and was told in return that if he could get assurance of a performance and payment bond, that the deposit check would be forthcoming. When Mackin told Wasserman that he thought he could get the bond, Wasserman refused to give him a deposit check and told Mackin that he would not finance the job under any circumstances.

On June 26, 1959, the Creditors Committee actually recorded its decision in the minutes of its meeting to liquidate the businesses of Mackin at the end of the then current construction jobs. See Receiver's Ex. 6. On or about August 12, 1959, Wasserman hired Aaron Krock of Worcester, an auctioneer, to advertise and conduct a liquidation sale of Mackin's assets on September 10, 1959. On August 24, 1959, demand for payment of the collateral note for which the mortgage was security was first made. I find that no demand on the note was made before this date and that Mackin, up to this date, was not in default of the terms of the mortgages or the Trust Indenture.

On or about August 25, 1959, Wasserman, purporting to act under his powers under the Trust Indenture and the real estate mortgages, made an entry upon the real estate and took token possession of the tangible assets. Thereafter, on August 26, 1959, an Involuntary Petition in Bankruptcy was filed by three creditors of Mackin. It is to be noted that none of the facts found herein have been controverted in the slightest degree by Mr. Wasserman, or anyone.

■ I find that the so-called Trust Indenture together with the mortgage and the security agreement and the $350,000 demand promissory note, constituted an effectual assignment for the benefit of all creditors to the said Wasserman as that phrase is used in Section 2, sub. a

(21) of the Bankruptcy Act, U.S.C.A. Title 11, § 11, sub. a(21), since the equity of redemption under all of the circumstances was a sham and the Trustee, acting under the instruments and without a demand on the note or a default in the terms of the mortgages of the Trust Indenture, took immediate possession and control of Mackin's businesses and proceeded to a liquidation of all of the assets of the alleged bankrupt.

I find that on the date of filing of the Involuntary Petition in Bankruptcy and on the date that the instant petition was filed the said Wasserman was in possession and control of $11,618.86 which belonged to Mackin and which was deposited to the name of Wasserman in the Franklin County Trust Company, Greenfield, and that he purported to be the mortgagee in possession of the real estate and tangible assets of Peter C. Mackin.

## 2. CONCLUSIONS OF LAW

Section 2, sub. a(3) of the Bankruptcy Act, U.S.Code, Title 11, § 11, sub. a(3), provides in part that Courts of Bankruptcy may "appoint, upon the application of parties in interest, receivers * * * to take charge of the property of bankrupts and to protect the interests of creditors after the filing of the petition and until it is dismissed or the trustee is qualified * * *." Adjudication of bankruptcy is not a prerequisite to the appointment of a receiver. 1 Collier on Bankruptcy 196–200.

"A trustee in bankruptcy who has been appointed within four months of a general assignment made by a debtor for the benefit of his creditors has a right to obtain an order from the bankruptcy court, and in a summary proceeding, compelling the assignee to submit his accounts and to turn over to him all money and property in his hands which belonged to his assignor. No plenary suit is necessary in a case of that sort. The assignee under such conditions is not an adverse claimant, but merely the agent of the assignor for the distribution of the proceeds of the property, and as such

agent his possession is that of the principal. He is a mere naked bailee for the creditors and has no right to retain the possession as against the trustee in bankruptcy. * * *" Matter of McCrum, (C.C.A.2d Civ.), 214 F. 207, 209. Similarly, a receiver appointed under Section a, sub. a(3) of the Bankruptcy Act, U.S. Code, Title 11, § 11, sub. a(3), may obtain possession of assets of the estate of the bankrupt from an assignee for the benefit of creditors. Section 2, sub. a (21) of the Act. Accord: Matter of Rosenberg, 128 F.2d 924, (C.C.A. 7th Cir.). An assignment for the benefit of creditors may take the form of a "trust mortgage" and yet be ruled an assignment. Matter of Heleker Bros. Mercantile Co., (D.C.K.Kans.), 216 F. 963.

## ORDER

In the premises and in accordance with the Memorandum on Petition filed herewith, it is hereby ORDERED, ADJUDGED and DECREED that:

1. Arthur T. Wasserman, Esquire, deliver forthwith to Timothy J. Driscoll, Receiver, all property, tangible or intangible and wherever located, of the Alleged Bankrupt in his possession or under his control, including, without limiting the generality of the foregoing, the funds deposited to his name as trustee in the Franklin County Trust Company, Greenfield, Massachusetts.

2. Arthur T. Wasserman file with this Court forthwith an accounting of the disposition by him of the property of the Alleged Bankrupt during the period April 28, 1959, to date.

3. Arthur T. Wasserman forthwith execute an assignment, in proper form for recording, of the mortgage which was executed by the Alleged Bankrupt and his wife on or about April 28, 1959, and is attached to the said Wasserman's answer to the Receiver's petition and marked as Exhibit "A", and an assignment of the security agreement executed by the Alleged Bankrupt and the said Arthur T. Wasserman and marked Exhibit "C"; said assignments shall designate Timothy J. Driscoll, Receiver, as the

assignee in each case and shall be delivered forthwith to the said Driscoll.

4. It is further ordered that if the Alleged Bankrupt is not finally adjudged a bankrupt and if no arrangement is proposed and confirmed, the aforesaid assignments shall be deemed to be null and void.